The employees of the Barbour County sheriff's department, tax assessor's office, tax collector's office, and juvenile office ("employees") sued the Barbour County Commission ("Commission"), alleging that the Commission discriminated against the employees by not offering them certain retirement and insurance benefits. The case was submitted on a stipulation of facts, and the trial court ruled against the Commission, requiring it to offer certain retirement and insurance benefits to the employees. We affirm.
The trial court's order reads as follows:
"This case was assigned to the undersigned Special Judge by Order of Chief Justice Sonny Hornsby on the 9th day of February, 1989. The attorneys for the Plaintiffs and Defendants submitted this cause for determination under an Agreed Stipulation of Facts and certain evidence submitted without objection.
"For the sake of clarity, continuity, and easy reference, the written stipulated facts are hereby set out verbatim and a copy of the resolution in question is attached as Exhibit A to this Order [omitted from this opinion]:
" 'On August 29, 1972, the Defendant adopted a Resolution which stated, among other things, that the Barbour County Commission determined that it was desirable for the public employees of the Barbour County Commission to be covered under an annuity and pension plan and stipulated that all fully budgeted positions on a full normal working time basis should be eligible for participation. The Resolution excluded certain groups of personnel from the benefits of said Resolution and said excluded groups of personnel were identified as persons filling positions in the Tax Assessor's and Tax Collector's Office, Circuit Clerk's employees, Judges of Courts, Judge of Probate employees, Sheriff and Sheriff's Department employees, and Board of Education employees.
" 'At the time said Resolution was adopted in 1972, the Tax Assessor and Tax Collector were on the fee system and employed their own employees and paid said employees out of their personal funds. The said employees were not employees of the Barbour County Commission. The Judge of Probate was on the fee system and is still on the fee system and with the exception of Wilma Cook, Chief Clerk in the Clayton office, pays all of his employees out of his own funds. Act No. 82-855 enacted by the State Legislature on August 22, 1982, authorized the County Commission of Barbour County to employ a Chief Clerk to work in the Office of the Probate Judge; such employee was to be selected by the Probate Judge, and [the act] directed that said employee is to be paid out of the General Fund of the County. The Defendant hired Mrs. Wilma Cook, who had become Chief Clerk of the Clayton office and an employee of Probate Judge Mack Price when Price took office in 1976, as the person to continue serving in said position. At the time the County Commission converted Mrs. Cook, an employee of the Probate Judge paid out of the Probate Judge's funds, to a County employee paid out of the General Fund, she became a regular, full-time, budgeted employee of the Barbour County Commission working in the Probate Office. The Barbour County Commission, at a special meeting on October 19, 1982, honored Probate Judge W. Mack Price's request that Mrs. Cook be allowed to participate in the retirement program and the County Clerk was instructed to make said participation effective October 1, 1982.
" 'On October 1, 1982, pursuant to Section 40, Chapter 6A, Code of Alabama 1975, the Barbour County Tax Assessor and the Barbour County Tax Collector changed over from the fee system to a salary system, and at such time all of the personnel in said office[s] became County Commission employees who occupied fully budgeted positions on a full working time basis. The Circuit Clerk and his employees as well as the Judges of Court are now State employees and as such are covered by the State Judicial Retirement Act. The employees of the Board of Education are covered under the State Teachers and Employees' retirement fund[s]. The sheriff and *Page 495 
the Sheriff's Department employees, as well as the employees of the County Juvenile Office, continue to be Barbour County Commission employees occupying fully budgeted positions on a full working time basis. Since 1972, the Defendant has included approximately 45 employees of the Road and Bridge Department, 4 employees of the County Commission's office, 1 employee of the Probate Office, 2 employees from the County Engineer's Department, all members of the County Commission, the County Attorney, and 2 employees of the Solid Waste Department under the insurance and retirement plan. The Defendant provides insurance benefits for employees who are under the direct supervision of the County Commission and also for Bob Bradley who works under the direct supervision of Bob Methvin, Tax Assessor, and Wilma Cook, Chief Clerk of the Probate Office in [the] Clayton Division, who works under the direct supervision of Probate Judge Mack Price, and all employees who work in the Sheriff's Department under the direct supervision of the Sheriff. Mrs. Cook was a member of the retirement system when she worked in the Probate Office of Bullock County prior to 1977, but was not a member of the retirement system during her tenure with Judge Mack Price as an employee of Judge Mack Price from January, 1977 until October 1, 1982.
" 'Plaintiffs, prior to filing suit, requested by and through their attorney as reflected in the March 14, 1988, County Commission Minutes, that they be accorded retirement and insurance benefits on an equal par with those County employees who were then receiving such benefits. At the April, 1988 meeting, Attorney Jimmy S. Calton, who appeared on behalf of said employees, received the Commission's answer that said request was being denied. Benelle Warr, Tax Collector of Barbour County, addressed a letter to Commission members on June 10, 1987, wherein she asked that the employees of the Tax Collector's Office be granted insurance and retirement benefits. No action was taken on said request.
" 'The employees of the Barbour County Commission who were assigned to work under the direction of the Sheriff, have at all times been full-time fully budgeted employees, working on a full working time basis. The employees of the Tax Collector's and the Tax Assessor's office became employees of the Barbour County Commission assigned to work in the Tax Collector's and the Tax Assessor's offices, in a full-time fully budgeted position as of October 1, 1982.
" 'The Juvenile Probation Office was created by the Judicial Article and became operational in January, 1976. The employees of the Barbour County Commission who work in the Juvenile Probation Office have at all times been full-time fully budgeted employees working on a full normal working time basis.
" 'The various county commissioners and the various county attorneys have been participants in said retirement plan since the adoption of the Resolution on August 29, 1972. The various county attorneys have all maintained separate full-time law practices in addition to performing their functions as County Attorney. The various county attorneys have been paid a regular monthly salary from which all applicable federal and state deductions were made. The various county commissioners since 1972 who were not retired, have all maintained other forms of employment to provide their prime monetary livelihood in addition to fulfilling their duties as elected county commissioners. The various county commissioners, as duly elected public officials, are on call 24 hours a day to fulfill their elected duties and obligations.
" 'At the time the County opted to participate in the retirement plan in 1972, all employees of the Barbour County Commission who were then allowed to participate by virtue of said 1972 Resolution, were at least partially paid out of the funds generated by the gasoline tax. There presently are two employees who are receiving retirement and/or insurance benefits who are not paid out of the gasoline tax. Robert Bradley, an employee of the Tax Assessor's Office, receives insurance benefits paid for by the County but no retirement benefits. Robert Bradley was employed by the Barbour *Page 496 
County Commission and assigned to work in the Tax Assessor's Office as the reappraiser on October 20, 1980, and at such time was a fully budgeted employee who was working on a full normal working time basis.
" 'All of the Plaintiffs and all of the employees of the Barbour County Commission are at-will employees and can only be hired and fired by formal action of the Barbour County Commission. Plaintiffs and all employees of the Barbour County Commission are subject to the Employee's Guidebook, which is handed to each employee at the initial date of employment. Salaries of the Plaintiffs and all other Barbour County employees and all other benefits given said employees are set by the County Commission. The Solid Waste employees were allowed to begin participating in the retirement fund on March 1, 1982, and their salaries are paid out of the Solid Waste Fund. Those employees who are allowed to participate in the retirement fund contribute 5% of their monthly salary. The County contributes the remaining portion of the contribution, which varies from year to year and in 1982 amounted to 22% and in 1988 amounted to 7.5% of each employee's monthly salary. Those employees who are furnished insurance receive said coverage at no charge but the employee pays for the cost of adding dependent's insurance if said employee elects to receive same.
" 'The Parties stipulate that the following exhibits shall be admitted into evidence without objection: (1) Section 40-6A-1
through 8, Code of Alabama, 1975 (Act which switched Tax Collector and Tax Assessor to salary and obligated the county commissioners to employ office personnel to work in said offices); (2) Act 82-855, adopted August 22, 1982 (Act which authorized County Commissioner to employ Chief Clerk to work in Probate Office); (3) Act 81-733, adopted May 21, 1988 (Act authorizing County Commission to employ additional clerical employees in Office of the Tax Assessor or Office of the Tax Collector); (4) June 10, 1987, letter from Benelle Warr to Commission members; (5) Employee Guidebook furnished to County employees; (6) Answers to Interrogatories; (7) exhibits furnished pursuant to Motion to Produce; (8) August 29, 1972, Resolution approving participation in retirement plan; (9) Commission minutes of March 14, 1988, March 4, 1982, October 19, 1982, and April 1988 [sic]; (10) Section 36-27-6, Code of Alabama 1975; (11) Sections 11-91-1 through 11-91-7, Code of Alabama 1975. . . .
"Upon review of the briefs and arguments of counsel, stipulation of facts and evidence admitted without objection, the Court concludes that the issues to be determined by the Court are as follows:
"1. Whether or not the resolution of the Barbour County Commission dated August 29, 1972, which was authorized by Act No. 515 of the 1945 Legislature as amended and which said Act is now codified as Section 36-27-1 et seq., Code of Alabama [1975], and the subsequent action of the Barbour County Commission in its application and implementation of said resolution to exclude certain full-time fully budgeted employees from participation in the County-sponsored retirement fund with the State of Alabama constitute impermissible, arbitrary and discriminatory favoritism among some County employees in violation of the equal protection clauses and due process clauses of both the State of Alabama and United States constitutions.
"2. An additional issue presented by the stipulation of facts and agreed introduction of evidence is whether or not there has been discriminatory and arbitrary actions by the Barbour County Commission in its affording insurance benefits to some County employees while denying it to others.
"3. Should the Court find that there has been a violation of provisions of the federal and/or state constitutions in either or both of the two issues raised, what relief should be ordered by this Court under the circumstances and facts of this case?
"Due process of law has consistently and repeatedly been required by the Supreme Court of Alabama in both civil and criminal cases. Pike v. Southern Bell Telephone TelegraphCo., 263 Ala. 59, 81 So.2d 254 *Page 497 
(1955). The Supreme Court of Alabama in Opinion of the JusticesNo. 102, 252 Ala. 527, 41 So.2d 775 (1949), held that while due process and equal protection guarantees were not coterminous in their spheres of protection, nevertheless, equality of right was fundamental to both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. The Court went on to hold that in order to be constitutionally permissive, it was essential that a law which sought to create classifications must do so in a manner that makes the classifications reasonable and not arbitrary and any such classification must be based upon material and substantial distinctions and differences which are reasonably related to the subject matter of the legislation or considerations of policy sought to be implemented. The Court also held that there must be uniformity within a particular class.
"In Woco Pep Co. of Montgomery v. City of Montgomery,213 Ala. 452, 105 So. 214, 218 (1925), the Alabama Supreme Court set out 5 criteria for determining the validity of legislative classifications:
 " 'Tests for the determination of the operation or administration of a law or ordinance as to a classification contained therein within the Constitutions, state and federal, are that the class (1) must be germane to the purpose of the law; (2) must bring within its influence all who are under the same conditions and apply equally to each person or member of the class, or each person or member who may become one of such class; (3) must not be so restricted and made to rest upon existing circumstances only as not to include proper additions to the number included within the class; (4) must be based on substantial distinctions which make one class different from another; and (5) must be reasonable under the facts of the case, and not oppressive and prohibitive. Gamble v. City Council of Montgomery, 147 Ala. 682, 39 So. 353; Republic I. S. Co. v. State, 204 Ala. 469, 86 So. 65; St. Louis Co. v. Illinois, 185 U.S. 203, 22 S.Ct. 616, 46 L.Ed. 872; State v. W.U.T. Co., 208 Ala. 228, 94 So. 466. This is necessary to secure uniformity in the operation, administration, and proper distribution of the burdens of government. Ex parte Robert Smith, 212 Ala. 262, 102 So. 122; Republic I. S. Co. v. State, 204 Ala. 469, 86 So. 65.'
"Likewise in Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373,43 L.Ed.2d 688 (1975), the United States Supreme Court held that if a classification is to withstand an equal protection analysis, it must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in a similar position would be treated essentially the same.
"The August 29, 1972, Resolution was premised on the fact that the Barbour County Commission had determined that it was desirable for the public employees of the Barbour County Commission to be covered under a pension plan and further provided that all full-time budgeted employees would be eligible for participation. The resolution excluded certain groups of personnel from receiving the benefits of the pension plan primarily on the basis that the excluded groups contained persons who were not then working for the Barbour County Commission but rather were working for the Tax Assessor and Tax Collector, who were paid on the fee system and who employed their own employees and paid their own employees out of their personal funds. It also appears that an effort was made to allow only those employees who were full-time fully budgeted employees and who received at least a portion of their salaries from the gasoline tax to participate. It is not clear why the Sheriff's Department employees were denied the right to participate since at all times they have been full-time fully budgeted employees of the Barbour County Commission unless it was solely because no portion of the Sheriff's employees' salaries came from the gasoline tax. The Board of Education employees were then and are now covered by the State Education Retirement Program. The Judge of Probate is still on the fee system and pays his own employees and *Page 498 
thus those employees, with the exception of the Chief Clerk in the Clayton Office, are not employees of the Barbour County Commission. The Juvenile Probation Office was not in existence at the time of the 1972 Resolution but all employees in this office have been fully budgeted full-time employees of the Barbour County Commission since the office was created in 1976. The Circuit Clerk and his employees, as well as the Judges of Court, are now State employees and as such are covered by the State Judicial Retirement Act. The employees of the Tax Collector's and Tax Assessor's Office[s] became employees of the Barbour County Commission assigned to work in the Tax Collector's and the Tax Assessor's offices in a full-time fully budgeted position as of October 1, 1982.
"The Court is of the opinion that the County's attempt to justify the unequal treatment of various of its employees as to pension benefits is unreasonable and results in the Plaintiff employees' rights to due process and equal protection being violated. The 1972 Legislative Resolution which created the 'included' and 'excluded' classifications, made no provision for any change in circumstances such as occurred when the Tax Collector's and Tax Assessor's employees legislatively were changed from being personal employees of the elected officials to being full-time budgeted employees of the Barbour County Commission. Likewise the resolution did not contemplate the creation of new departments such as the Juvenile Probation Office.
"The Court also finds that there is no logical and reasonable distinction between work performed by secretaries and clerks in the Tax Assessor's, Tax Collector's, and Juvenile Probation Office who are not covered and secretaries and clerks who work in the Engineer's and County Commission Office who are covered. All of said employees are hired solely upon the approval of the County Commission, are covered by the same Employees' Guidebook, work only on County property, and have the same paid holiday schedules.
"The Court finds that since the 1972 Resolution did not specifically exclude the Juvenile Probation employees, said employees who were full-time fully budgeted employees of the Barbour County Commission were automatically eligible to participate in the pension plan on the date they were hired because all present and future employees in this office meet the express requirements of the resolution as of the day the office was created in 1976.
"The Court finds that the Barbour County Commission has consistently ignored the criteria established in the 1972 Resolution since its inception by allowing the various County part-time attorneys and county commissioners to immediately participate in the County pension plan in violation of the express language of the Resolution. Also, there is nothing in the record to show that the part-time attorneys and county commissioners were partially paid from the gasoline fund, which seems to have been a 'loose' criterion in 1972. Therefore, the Court rules that since the Barbour County Commission has from its inception in 1972 accorded pension benefits to the part-time county commissioners and county attorneys, and since the gasoline tax distinction is no longer relevant, it is constitutionally impermissible for the Barbour County Commission to discriminate against members of the Sheriff's Department who were full-time budgeted employees in 1972 by denying to them the right to participate in the pension program.
"The Court finds that the 1972 Resolution failed to meet the criteria set out in Woco Pep Co. of Montgomery v. City ofMontgomery, supra, in that it did not bring within its influence all who were under the same conditions and did not apply equally to each member person of the class or each person or member who may become a member of the class and likewise did not provide for proper additions to be made when circumstances changed. The Court finds that the attempted classifications were not based on substantial distinctions between the employees in one office and the employees in the next office. Under the facts of this case as contained in the stipulation, the Court is further of [the] opinion that the classifications as applied *Page 499 
today are not reasonable and do not achieve the very purposes as set forth in the Resolution, . . . to provide all regular full-time budgeted public employees of the Barbour County Commission with the opportunity to be covered under a pension plan.
"The Court was also faced with the issue of deciding whether or not the Barbour County Commission discriminatorily denied medical insurance benefits to some of its employees while granting the same benefits to other similarly situated employees. The Barbour County Commission elected to furnish medical insurance benefits pursuant to Section 11-91-2, Code of Alabama (1975), which specifically provides in Section (b) that as a condition to providing said insurance to County employees, the County must do so in a manner which precludes individual selection by such officers and employees or by the governing body and by further prohibiting any discrimination within any specified class.
"This Court has already held that the attempted classifications were discriminatory. In addition, the Barbour County Commission has crossed its lines of classifications by providing some employees in one office insurance benefits while denying other employees in the same office the same insurance benefits. For example, generally the employees of the Tax Assessor and Tax Collector's office[s] aren't afforded insurance benefits but Bob Bradley, an employee in the Tax Assessor's Office, does have insurance benefits provided to him by the County. The Sheriff's deputies are denied retirement benefits but nevertheless receive insurance benefits. The Chief Clerk in the Clayton Probate Office receives insurance and retirement benefits even though the 1972 Resolution specifically excluded Judge of Probate employees. Some of the County Commission employees who work for the County Clerk receive no insurance benefits while other County Commission employees working for the same Clerk, including the Clerk, do receive insurance benefits. The Clerk for the County Engineer receives insurance benefits. Consequently, the Court is of the opinion that the way in which the Defendant has sought to provide medical insurance benefits pursuant to Section 11-91-1, Code of Alabama 1975, has been arbitrary and capricious and has violated the express provisions of said statute.
"IT IS ACCORDINGLY ORDERED, ADJUDGED and DECREED as follows:
"1. The Plaintiffs who are employees of the Sheriff's Department are entitled to retirement benefits relating back to 1972 or the date of employment, whichever occurred last. The Barbour County Commission is hereby directed to make a contribution to the retirement program in an amount equal to the County's annual contribution for other employees for each calendar year that a Plaintiff who is an employee of the Sheriff's Department is entitled to participate in said program and for which the Plaintiff Sheriff's employee wishes to make the employee's contribution.
"2. The Plaintiff employees of the Tax Assessor and Tax Collector's Office[s] are entitled to retirement benefits dating from October 1, 1982. The Barbour County Commission is hereby directed to make a contribution to the retirement program in an amount equal to the County's annual contribution for other employees for each calendar year that a Plaintiff who is an employee of the Tax Assessor and Tax Collector Department is entitled to participate in said program and for which the Plaintiff Tax Assessor and Tax Collector employee wishes to make the employee's contribution.
"3. The employees in the Juvenile Probation Office are entitled to retirement benefits from their date of employment. The Barbour County Commission is hereby directed to make a contribution to the retirement program in an amount equal to the County's annual contribution for other employees for each year that a Plaintiff who is a member of the Juvenile Probation Office Department is entitled to participate in said program and for which the Plaintiff Juvenile Probation Office's employee wishes to make the employee's contribution. *Page 500 
"4. Each of the Plaintiff employees who [is] not presently receiving medical insurance benefits [is] entitled to receive immediate medical insurance benefits equal to the medical insurance benefits accorded to other full-time fully budgeted employees of the Barbour County Commission. The Barbour County Commission is hereby directed to take such steps as are necessary to enroll each Plaintiff not already receiving said medical insurance benefits in the County medical insurance program and to pay for said medical insurance benefits in the same manner as it pays for other full-time fully budgeted employees.
"5. All costs of this action are taxed against the Defendant, for which let execution issue.
"DONE and ORDERED this the 30th day of Nov. 1989.
 "/s/ Charles L. Woods --------------------- "CHARLES L. WOODS,
Circuit Judge"
We agree with the analysis and holding of the trial court on each point, and we adopt the trial court's opinion as our own. It follows that the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, JONES, ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur.