ROBERTSON, Presiding Judge.
This appeal involves the constitutionality of one legislative act and the interpretation of another.
David Bronner, individually and as CEO and secretary-treasurer of the Employees’ Retirement System of Alabama (ERS), along with others in their individual capacities and as members of ERS’s Board of Control, filed suit against David Avant seeking a declaratory judgment as to the constitutionality of Alabama Act No. 89-800, as codified in §§ 36-27-100 to -103, Code 1975 (Cum.Supp. 1989). The act would allow certain part-time legislative employees to purchase additional retirement credit by paying specified amounts to ERS.
Avant, an employee described under Act No. 89-800, attempted to purchase such *293 credit, but was denied by ERS’s board. After answering the suit filed by Bronner, challenging the constitutionality of Act No. 89-800, Avant counterclaimed, attempting to enjoin the board’s refusal to accept Avant’s tender to also purchase additional retirement credit in accordance with the provisions of Alabama Act No. 89-915, as codified in § 36-27-53, Code 1975 (Cum.Supp.1989), and to require ERS to accept his tender and give Avant the appropriate credit.
After an ore tenus proceeding, the trial court found Act No. 89-800 to be constitutional and granted Avant and any other qualified state employee sixty days from the date of judgment to purchase the requested retirement credit as allowed by the statute. Also, the trial court ruled in favor of Avant on his counterclaim as to Act No. 89-915 and assessed costs against Bronner.
Bronner appeals as to the constitutionality of Act No. 89-800 and as to the interpretation of Act No. 89-915, arguing that Avant should not be allowed to participate under the terms of Act No. 89-915 because he already has received retirement credit for his previous part-time legislative employment.
We first address Act No. 89-800, which in pertinent part provides:
“Section 2. Each part-time employee of the Legislature of Alabama who is eligible and has elected to participate in the State of Alabama Employees’ Retirement System shall be eligible to pay into the State of Alabama Employees’ Retirement System up to one-half or fifty percent of the amount of money the part-time employee has previously contributed into the fund. Upon paying up to one-half or fifty percent of the money the part-time employee has previously contributed into the State of Alabama Employees’ Retirement Fund, the legislative employee shall receive a credit proportional to his or her payment of up to one-half or fifty percent in addition retirement credit in years and months from the State of Alabama Employees’ Retirement System. Any employee may elect to pay an amount into the State Employees’ Retirement Fund of less than fifty percent or one-half of his or her total part-time retirement contribution previously paid and shall then receive a corresponding percentage credit in years and months of service towards retirement.
[[Image here]]
“Section 4. Any part-time legislative employee who qualifies and chooses to pay into the State of Alabama Employees’ Retirement System, beginning with the Regular Session of the Legislature of Alabama in 1989, may choose to pay an additional fifty percent into the State of Alabama Employees’ Retirement System and receive an additional fifty percent credit in months of employment to his or her credit, towards retirement.”
The trial court, after an ore tenus proceeding, hearing oral arguments and reviewing extensive briefs, entered a lengthy order •which we quote in part as to Act No. 89-800, as follows:
“The Plaintiffs argue that the act unconstitutionally provides greater retirement benefits to a favored few part-time legislative employees than are granted by the general retirement law to other part-time legislative employees, part-time state and local governmental employees and full-time legislative employees and state and local governmental employees who participate in the Employees’ Retirement System of Alabama. Further, the Plaintiffs state that such disparate treatment is not justified by any state interest and is in violation of the equal protection provisions of the Alabama and United States Constitution.
“A statute violates the equal protection laws of the constitution if it is not rationally related to a legitimate government purpose. The testimony established that the purposes furthered by the act include: saving state resources by providing incentives to part-time or temporary legislative employees to continue their employment on this basis as opposed to requiring the state to employ full-time employees to perform similar functions, when their services would only be required a few months each year; providing incentives to these part-time or temporary employees to continue in their employment, thus obviating the need to train new employees for these *294 positions; and, providing an incentive to attract and retain highly qualified new part-time or temporary employees for these positions.
“.... The court finds that the purposes set out above provide a rational basis for permitting the employees set forth in Act No. 89-800 to purchase additional retirement time as set forth in the act. Act No. 89-800 is not ambiguous, and it is apparent that the legislature intended to provide greater benefits for part-time legislative employees who work on a regular basis when the legislature of Alabama is in session.
“In White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989), the supreme court states ...:
“‘The guiding principles for courts to apply when legislative acts are challenged as unconstitutional were ably expressed in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18, So.2d 810, 815 (1944):
“ ‘Uniformly, the courts recognize that this power is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitation imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487.’
“In support of [their] position, Plaintiffs bring to the court’s attention Barbour County Comm’n v. Employees of the Barbour County Sheriff’s Dept., 566 So.2d 493 (Ala.1990). In this case, certain groups of personnel employed by Barbour County alleged discrimination because they were not offered certain retirement and insurance benefits. The trial court found in favor of the employees and the Alabama Supreme Court affirmed. Although the supreme court found that the actions of the Barbour County Commission were arbitrary and discriminatory, the case does not forbid all classifications — such as the classifications created by the legislature in the present case which were neither arbitrary nor invidiously discriminatory. The court in Barbour County, supra, cited Opinion of the Justices No. 102, 252 Ala. 527, 41 So.2d 775 (1949), which held
“ ‘that in order to be constitutionally permissive, it was essential that a law which sought to create classifications must do so in a manner than makes the classifications reasonable and not arbitrary and any such classification must be based upon material and substantial distinctions and differences which are reasonably related to the subject matter of the legislation or considerations of policy sought to be implemented. The court also held that there must be uniformity within a particular class.’ (Emphasis added.)
“In the case at hand, the class created is part-time employees of the senate. The reasons for treating these employees differently are set out above. Justice Almon in White, supra, states that ‘[i]n determining whether “it was reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose,” Western & Southern Life [Ins. Co. v. State Bd. of Equalization], 451 U.S. 648 [101 S.Ct. 2070, 68 L.Ed.2d 514], we need only inquire whether the legislature engaged in “invidious” or “hostile and oppressive discrimination,” Lehnhausen [v. Lake Shore Auto Parts Co., 410 U.S. 356 [93 S.Ct. 1001, 35 L.Ed.2d 351]].’ [558 So.2d at 388.] The court finds that there is no showing of invidious discrimination nor hostile purpose.
*295 “The court further finds that Act No. 89-800 is not a special private or local law and that the Plaintiffs have failed to show that Act No. 89-800 is unconstitutional beyond a reasonable doubt. Therefore, Alabama Act No. 89-800 is constitutional and due to be implemented by Plaintiffs.”
We agree with the trial court’s reasoning, and since the act was not shown to be unconstitutional beyond a reasonable doubt, we hold Act No. 89-800 to be constitutional.
Next, we consider the trial court’s granting of Avant’s counterclaim, which would allow him to purchase additional retirement credit under Act No. 89-915. Since we are construing a statutory provision, no presumption of correctness attaches to the decision of the trial court. Phenix City Board of Education v. Teague, 515 So.2d 971 (Ala.Civ.App.1987).
Act No. 89-915, later codified in § 36-27-53, Code 1975 (Cum.Supp.1989), states:
“Any active and contributing member of the employees’ retirement system who has vested retirement benefits may hereby claim and purchase credit in the employees’ retirement system for up to four years’ time for employment by the Alabama legislature prior to 1979, provided, that such member shall pay into the employees’ retirement system the total amount he would have contributed had he been allowed to contribute_” (Emphasis added.)
Although it is undisputed that Avant meets the initial criteria found in this code section, Bronner argues that the legislature did not intend for employees who already had received retirement credit for past service to be able to purchase additional credit for the same service. We agree. As worded in § 36-27-53, Avant could purchase additional retirement credit based on an amount “he would have contributed had he been allowed to contribute-” This language, therefore, precludes Avant’s participation under Act No. 89-915 if he already has been allowed to contribute and to purchase all of his retirement credit for his previous part-time legislative employment prior to 1979.
During trial, the following exchange took place between Avant and Bronner’s attorney on cross-examination:
“Q. Are you a member of the Employees’ Retirement System of Alabama today?
“A. Yes, sir.
“Q. And when did you first begin participation in the Employees’ Retirement System?
“A. In 1984.
“Q. Have you participated in the Employees’ Retirement System since 1984?
“A. Yes, sir.
[[Image here]]
“Q. At that time when you joined the Employees’ Retirement System, did you obtain credit for all of your prior employment with the state legislature?
“A. Yes, sir. At that time I purchased the part-time that I had worked for the past thirty years.”
Clearly from his own testimony, Avant was allowed to participate in 1984, at which time he contributed and paid into the ERS and purchased retirement credit for all of his prior part-time legislative employment.
Consequently, since Avant was allowed to contribute to the ERS on all of his employment by the legislature prior to 1979, he has no time left on which to contribute under Act No. 89-915. That part of the trial court’s judgment granting Avant’s counterclaim is hereby reversed.
This case is affirmed in part as to Act No. 89-800 and reversed in part as to Act No. 89-915 and remanded for a judgment accordingly.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
THIGPEN and RUSSELL, JJ., concur: