[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13797
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-00699-WKW-TFM

JANICE INGALLS, *et al.*,

Plaintiffs - Appellants,

versus

U.S. SPACE AND ROCKET CENTER, *et al.*,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 16, 2017)

Before ED CARNES, Chief Judge, JORDAN, Circuit Judge, and SMITH,[*] District
Judge.

_____

[*] Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

Dr. Wernher von Braun, a visionary rocket scientist, was responsible for Nazi Germany's V-2 rocket, and, after World War II, for putting American Apollo astronauts on the moon. Also a visionary for earthly endeavors, he was responsible for convincing the Alabama Legislature to create the U.S. Space & Rocket Center, which put his rockets and work on display for future generations. Dr. von Braun probably hoped that the Center would, like his rockets, launch visitors' imaginations to the moon and back and keep America's vigor for rocket science alive. He probably did not expect, however, that his Center would also be the launching pad for a federal equal protection and due process law suit.

Decades after the Center opened its doors, three former employees sued executives of the Space Science Exhibit Commission, which is responsible for running the Center, for failing to pay holiday and longevity benefits allegedly due to them under Alabama law. The former employees alleged that this failure, among other things, violated their federal equal protection and due process rights. The Commission executives countered by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that they are protected from suit by qualified immunity. The district court agreed with the executives and dismissed the claims against them. This timely appeal followed.

2

Following a review of the record, and with the benefit of oral argument, we affirm. With respect to the equal protection claim, the former employees failed to allege a violation of clearly established law. The due process claim fails because the former employees concede that they will receive adequate process in their parallel Alabama state court litigation.

# I

The second amended complaint alleges the following facts, which we accept as true. *See Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).

## A

In March of 1970, the U.S. Space & Rocket Center opened its doors in Huntsville, Alabama, and began offering visitors a unique glimpse into the United States space program. To manage the facility and programming, the Alabama Legislature established the Alabama Space Science Exhibit Commission. *See* Alabama Code §§ 41-9-430 through 41-9-439. Today, as Dr. von Braun had hoped, the U.S. Space & Rocket Center, operated by the Commission, provides the leading museum experience for those interested in the United States space program.

In January of 2014, the Alabama State Department of Public Accounts, which is responsible for auditing entities that receive or use state funds, issued a report detailing its audit of the Commission for 2007–2012. The audit report

3

found, among other things, that the Commission had failed to provide appropriate holiday and longevity pay to its employees as required by certain Alabama statutes. Specifically, the report concluded that (1) "[t]he Commission/USS&RC provides six fewer holidays to its state employees than are mandated by law for state employees," and (2) "[t]he Commission/USS&RC's employees who were entitled to receive longevity payments received less than the amount to which they were entitled."

To remedy the failure, the Department of Public Accounts recommended as follows:

> The Commission should award to its employees the holidays provided by the Code of Alabama 1975, Section 1-3-8(a), and should provide a day of compensatory leave or paid compensation in lieu of any holiday on which the employee is required to work, as required by the Code of Alabama 1975, Section 1-3-8(e).

> The Commission should re-compute longevity pay for each employee for all years in which they were qualified to receive longevity pay for reason of not having received a cost of living pay increase and should pay the employees the total amount of all underpayments due them.

The Department of Public Accounts released the report first to the Commission, and then to the public. After the report was issued, the Commission held a meeting with its employees. The Commission's management acknowledged the report and voiced its collective belief that the audit report findings were wrong. Management also said that the Commission would, if required, implement changes to the current employee benefits program. To date, Commission executives have

4

adopted none of the changes regarding holiday and longevity pay recommended by the Department of Public Accounts.

## C

The appellants, three former Commission employees, brought suit against several Commission executives for failing to provide them holiday pay pursuant to Alabama Code § 1-3-8(e) and longevity pay increases under Alabama Code § 36-6-11(a). As relevant here, the former employees alleged that these failures violated their federal equal protection and due process rights.[1]

In relevant part, § 1-3-8(e) provides that "[a]ny state employee working on a state holiday shall receive a day of compensatory leave or paid compensation in lieu of the holiday as provided herein." The paid holidays are listed in § 1-3-8(a), and § 1-3-8(b) specifies when those holidays shall be taken during the year. Although Commission employees were provided a benefits program that included some of the listed holidays, six of the holidays listed under § 1-3-8(a) were excluded.

Under § 36-6-11(a), "[e]ach person employed by the State of Alabama" is entitled to certain longevity pay. This provision awards the following longevity compensation to state employees:

---

[1] The former employees sued additional parties and asserted more claims, but they are not at issue on appeal.

> [A] lump sum the first payday of December each year the sum of three hundred dollars ($300) per annum after such employee has served for a total period of five years and shall receive the payment until the tenth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of four hundred dollars ($400) per annum until the fifteenth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of five hundred dollars ($500) per annum until the twentieth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of six hundred dollars ($600) per annum until the twenty-fifth year of total service, at which time the payment shall be made in a like manner and at a like time, but in the amount of seven hundred dollars ($700) as long as the employee remains in service.

*Id.* The Commission's benefits program provided employees these longevity pay benefits.

When state employees fail to receive cost-of-living pay raises, the longevity pay statute also provides for an increase in longevity pay:

> Beginning October 1, 2006, and continuing each fiscal year thereafter in which an employee does not receive a cost-of-living increase in compensation, each per annum amount provided in this subsection shall be increased by one hundred dollars ($100) per year to a maximum amount of one thousand dollars ($1,000) for 25 years of total service as long as the employee remains in service.

*Id.* This increase in the longevity pay was excluded from the Commission's benefits program.

## II

"A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established

6

constitutional right." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (quotation marks and citation omitted). "Whether the complaint sets forth a violation is a question of law that we review *de novo*." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).

In conducting this review, "[w]e are required to accept the facts as set forth in the . . . complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits." *Id.* "[A]ny conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts," on the other hand, "do not prevent dismissal." *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc). *See also Chandler v. Sec'y of Florida Dep't of Transp.*, 695 F.3d 1194, 1198–99 (11th Cir. 2012) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (citations and quotation marks omitted). The defense protects government officials sued in their individual capacities from liability when (1) they act within the scope of their discretionary authority, and (2) their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citation and quotation marks omitted).

7

If a state official was acting "within the scope of his discretionary authority, the burden falls to the plaintiff to show that qualified immunity is inappropriate." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). To meet this burden, a plaintiff must (1) "allege facts that establish that the [official] violated [his] constitutional rights," and (2) "show that the right involved was clearly established at the time of the putative misconduct." *Id.* (citation and quotation marks omitted). "We may consider these two prongs in either order, and a public official is entitled to qualified immunity if the plaintiff fails to establish either one." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and quotation marks omitted). This may be shown in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citations omitted). "In this circuit, the case law can be 'clearly established' for qualified immunity only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals,

8

or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

For a broad statement of principle to clearly establish a constitutional right, the case law must provide "fair warning" to the state actor, meaning that "in the light of pre-existing law the unlawfulness must be apparent." *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (citations and quotation marks omitted). This encompasses "those situations where the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (citation and quotation marks omitted) (addition in original).

## III

The former employees argue that the Commission executives are not protected by qualified immunity for two reasons. First, they did not act within their discretionary authority when they decided not to pay benefits required by Alabama law. Second, their decision violated clearly established equal protection and due process rights, whether or not there was case law directly on point. We disagree with both arguments.

## A

The Commission executives acted within their discretionary authority when they decided not to provide their employees with holiday and longevity pay. The relevant inquiry is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). The former employees ask us to examine "whether it was within the defendant's authority to commit the allegedly illegal act," but "framed that way," the inquiry becomes "not more than an untenable tautology." *Id.* at 1282–83. Whether an act fell within an official's discretion is "distinct" from whether that same act was illegal. *See Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1236 (11th Cir. 1992).

The question is whether the executives had the authority to set the appropriate pay and fringe benefits for the Commission's employees. *See Harbert Int'l, Inc.*, 157 F.3d at 1282–83; *Sims*, 972 F.2d at 1236. Clearly they did. The enabling legislation authorizes the Commission to "allocate and expend funds from all donations, income and revenue from any source whatsoever," Ala. Code § 41-9-432(11), and to "fix the compensation of . . . personnel," Ala. Code § 41-9-432(13). This suit, moreover, is premised on the former employees' assertion that the executives were responsible for operating the Commission and had the power to adjust employee compensation, including holiday and longevity pay. Setting the

10

Commission employees' fringe benefits was a task that fell squarely within the executives' discretionary authority.

## B

The former employees failed to allege violations of their clearly established equal protection rights. The Commission's employees are uniquely situated under Alabama law, and an apparent conflict between the Commission's enabling legislation and the benefits statutes gave the executives a reasonable statutory basis for their decision. Under these circumstances, qualified immunity protects the executives from suit.

## 1

The holiday pay statute requires that state supervisors who fail to schedule listed holidays "justify that action in writing to the Director of State Personnel." Ala. Code § 1-3-8(d)–(f). The Director of State Personnel, however, is a position created under Alabama's Merit System Act, and the Commission's employees are expressly excluded from the Merit System Act under the Commission's enabling statute. *See* Ala. Code § 41-9-432(13) (providing that the Commission's "executive director and such additional personnel shall not be subject to the provisions of the state Merit System Act"). The holiday pay statute also instructs that an "employee shall receive pay at a rate not less than the employee's usual and

customary rate of pay for any compensatory leave day[.]" Ala. Code § 1-3-8(f). Yet the Commission's enabling legislation, contrary to this command, gives the Commission authorization "[t]o *allocate and expend funds* from all donations, income and revenue *from any source whatsoever* coming into its treasury[.]" Ala. Code § 41-9-432(11) (emphasis added). And it states that the Commission "shall fix the compensation of . . . personnel and such compensation shall be paid from the funds of the commission." Ala. Code § 41-9-432(13).

The longevity pay statute also apparently conflicts with the Commission's enabling legislation. Although the longevity pay statute does state that it applies "whether [the employee is] subject to the state Merit System or not," it nevertheless commands that employees be paid "in addition to all salaries or wages" "from such funds as the salaries of the several state employees are, respectively, paid[.]" Ala. Code § 36-6-11(b), (d). This latter command is at odds with the Commission's enabling statute, which created an entity that self-funds and has discretion to set its employees' compensation. *See* Ala. Code § 41-9-432(13) (providing that "additional personnel and such compensation shall be paid from the funds of the commission"); Ala. Code § 41-9-432(11) (affording the Commission discretion "[t]o allocate and expend funds from all donations, income and revenue from any source whatsoever coming into its treasury").

**2**

The former employees argue that our decision in *Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996), and the Alabama Supreme Court's decision in *Barbour Cty. Comm'n v. Employees of Barbour Cty. Sheriff's Dep't*, 566 So. 2d 493 (Ala. 1990), established that the executives' failure to pay them fringe benefits under Alabama law violated their clearly established equal protection rights. Our review of these cases, however, leads us to a different conclusion. We discuss *Alderman* first, and then turn to *Barbour County*.

The former employees cite to *Alderman* for the "broad, clearly established principle," Appellants' Br. at 21–22, that "unequal application of a facially neutral statute may violate the Equal Protection Clause." 830 F.2d at 264. But in *Alderman*, we explained that to prevail on such an equal protection claim plaintiffs must establish that they were "treated differently than similarly situated persons." *Id*. at 264 (ellipsis omitted). This showing is important:

> The reason that there is a similarly situated requirement in the first place is that at their heart, equal protection claims, even class of one claims, are basically claims of discrimination. To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the similarly situated requirement with rigor.

*Griffin Indus., Inc.*, 496 F.3d at 1207 (citations and quotation marks omitted). That is why we also explained in *Alderman* that "[d]ifferent treatment of *dissimilarly* situated persons does not violate the equal protection clause." 74 F.3d at 265 (emphasis added) (citation and quotation marks omitted).

13

Although the former employees may *allege* that they have been treated unlike "other state employees," Second Amended Complaint, D.E. 31, at ¶¶ 104–109, the outlined statutory scheme makes clear that they were uniquely situated under the statutes creating the Commission and establishing its powers. *See Weissman*, 500 F.3d at 1305 ("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal."). Given the potential difference between Commission employees and other Alabama state employees, *Alderman* did not put the Commission executives on notice that their decision violated clearly established federal equal protection rights. *See Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009) ("By clearly established we mean it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.") (citation and quotation marks omitted).

The former employees also rely on the Alabama Supreme Court's *Barbour County* decision, which they claim recognized that the "unequal application of a facially neutral law" gives rise to an equal protection claim. Appellants' Br. at 23. As with *Alderman*, their reliance is misplaced.

In *Barbour County*, the Alabama Supreme Court concluded that the Barbour County Commission's decision to arbitrarily include some employees in its retirement and insurance benefits program while excluding others violated the federal equal protection and due process rights of County employees. 566 So. 2d

at 494. The Barbour County Commission had passed a resolution providing that all its "public employees" who held "fully budgeted positions on a full normal working time basis" were permitted to participate in a certain benefits program. *Id.* But certain obviously and undebatably eligible employees were excluded by other language in the resolution or by actions of the Commission, and those employees sued. *Id.* Upon review, the Alabama Supreme Court concluded the Barbour County Commission's "attempted classifications" to justify excluding obviously eligible employees were "not based on substantial distinctions between the employees," and did "not achieve the very purposes set forth in the [r]esolution." *Id.* at 498 (ellipsis omitted). This "unreasonable" "attempt to justify the unequal treatment of various of its employees," the Alabama Supreme Court reasoned, violated those "employees' rights to due process and equal protection." *Id.* (ellipsis omitted).

The circumstances which provided the basis for the holding in *Barbour County* are absent here. The Commission here, unlike the Barbour County Commission, did not create and then discriminatorily apply a benefits scheme to exclude clearly eligible employees from coverage. Instead, the Commission executives made a decision to not provide full longevity and holiday pay to employees who, as we have outlined, are uniquely situated under an existing, state-wide statutory scheme. *Barbour County* would not have made clear to a

15

reasonable official that the decision to not provide greater holiday and longevity pay was unlawful.[2]  *See Decosta*, 587 F.3d at 1285.

**3**

We recognize that, as alleged, the Department of Public Accounts found that Commission employees were entitled to greater holiday and longevity pay.  But that does not affect our analysis.  The former employees are not asserting claims under Alabama law, but under the federal Constitution.  In order to resolve whether qualified immunity protects the Commission executives from suit, therefore, we need not take sides in a dispute about Alabama law between two Alabama agencies.  Qualified immunity "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably."  *Callahan*, 555 U.S. at 231.  And we need only conclude that, at least under the circumstances presented, the former employees cannot overcome qualified immunity.  *See Maddox*, 727 F.3d at 1120 (qualified immunity "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and her family's welfare personally—from doing their jobs").

---

[2] The former employees, moreover, failed to allege circumstances so obviously at the core of what equal protection prohibits that, notwithstanding a lack of on-point case law, the unlawfulness of the executives' conduct was apparent.  *See, e.g.*, *Alderman*, 74 F.3d at 264.

16

## C

The former employees' procedural due process claim fails because Alabama state law affords adequate process to compensate for the loss allegedly caused by the Commission executives. *See generally McKinney v. Pate*, 20 F.3d 1550, 1564 (11th Cir. 1994) (en banc). The former employees conceded at oral argument that Alabama law recognizes their claims and provides adequate process to address their alleged pecuniary harm. They even admitted that this appeal would be moot if an Alabama state court awarded them all the relief sought in their parallel state court litigation. The due process claim does not survive these concessions.

For nearly a quarter century, the law of this circuit has been that "the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred." *McKinney*, 20 F.3d at 1564. "It is well-settled that a constitutional violation is actionable under § 1983 only when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009) (citations and quotation marks omitted). Here, "because adequate state remedies were available," the former employees have "failed to state a procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000).[3]

---

[3] There are some exceptions to this general rule, such as when due process requires pre-deprivation process, *see Hoefling v. City of Miami*, 811 F.3d 1271, 1283 (11th Cir. 2016) (discussing cases), but they are not applicable here.

17

The former employees' assertion that they "arguably" lack process for their breach of contract claim against the Commission, *see* Appellants' Br. at 30, is of no moment. The governing due process inquiry focuses only on whether state remedial process compensates litigants for the alleged loss they have suffered. *See, e.g.*, *McKinney*, 20 F.3d at 1564 ("McKinney's state remedy is adequate. The Supreme Court held in *Parratt* that the state's remedial procedure need not provide all relief available under section 1983; as long as the remedy could have fully compensated the [employee] for the property loss he suffered, the remedy satisfies procedural due process.") (citation and quotation marks omitted); *Horton v. Bd. of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("[T]he *McKinney* rule looks to the existence of an opportunity-to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so."). As the former employees concede, their Alabama state court litigation provides adequate process against the Commission executives for their alleged losses. The former employees' due process claim therefore cannot withstand the Commission executives' motion to dismiss.

## IV

In their initial brief, the former employees also contend that the district court erred in ruling that they lacked standing to pursue their claims for prospective injunctive relief. *See* Appellants' Br. at 32–36. But in their reply brief, the former employees say that the issue "is still not in a posture for proper consideration," and urge us not to address it. *See* Appellants' Reply Br. at 13. Though the former employees incorrectly presume that they will be able to engage in discovery with respect to injunctive relief, they have nevertheless abandoned any challenge to the district court's ruling on standing by asserting that the matter is not ripe for adjudication.

## V

For the reasons outlined above, we affirm the district court's dismissal, on qualified immunity grounds, of the former employees' equal protection and due process claims against the Commission executives.

**AFFIRMED.**