MAIN, Justice.
Members of the Birmingham Board of Education and the superintendent of the Birmingham City School System (hereinafter collectively referred to as "the defendants") appeal the Jefferson Circuit Court's judgment in favor of 24 "classified *25 employees"[1] of the Birmingham Board of Education (hereinafter collectively referred to as "the plaintiffs").[2] The trial court held that the plaintiffs' salaries had been miscalculated and awarded them monetary relief. The defendants argue, among other things, that they are entitled to immunity from the plaintiffs' claims. We agree that the defendants are entitled to immunity. For that reason, the trial court lacked subject-matter jurisdiction, and its judgment is void. Accordingly, we dismiss the appeal.
Facts and Procedural History
On December 30, 2011, numerous classified employees of the Birmingham Board of Education ("the Board") sued the Board, the Board's members in their official capacities, and the superintendent of the Birmingham City School System, in his official capacity. The plaintiffs claimed that when the Board adopted a new salary schedule in August 2004, existing employees, including the plaintiffs, were not reassigned to the proper "steps" on the new salary schedule and, thus, that their wages were miscalculated. Specifically, in their amended complaint, the plaintiffs alleged:
"... Defendants adopted a new pay schedule about August of 2004.
"... The [Board] instituted a policy of assigning employees to pay steps correspondent to the total number of years of service. Through the implementation of the new schedule and pay policy, defendants determine salary rates on the basis of total years of experience.
"... Defendants did not implement the new pay schedule with existing employees who occupied positions encompassed by the new pay schedule and policy in August 2004. Rather, the defendants continued to pay plaintiffs at their present rates of pay that did not recognize their years of experience.
"... With the implementation of the new 16-step pay schedule, defendants failed to make corresponding adjustments to plaintiffs' step assignments to reflect prior experience in the like manner to the pay rates set for the new supervisory hires or their newly promoted peers. As a result, defendants place the newly hired or newly promoted personnel at pay steps above the veteran employees. Hence, the new hires and newly promoted employees now make substantially more money than their more experienced peers.
"... Despite numerous meetings and discussions with the defendants pointing out the mistake and the obvious pay inequity, the defendants have stubbornly, willfully, arbitrarily and maliciously refused to adjust plaintiffs' salary to reflect total years of experience. Defendants have made no effort to correct the ministerial error of assigning plaintiffs to the proper pay step to reflect years of experience."
It is undisputed that in August 2004 the Board implemented a new salary schedule that included multiple pay "steps." The then current employees were placed on the step of the new salary schedule that most closely approximated their then current pay, and none of those employees received a reduction in pay. The plaintiffs *26 argued that current employees were assigned to a step on the new salary schedule that most closely corresponded to their then current rate of pay. They argued that each employee should have been assigned to the step that directly corresponded to his or her years of experience, which, they say, would have resulted in a significant pay increase for each of the plaintiffs. According to the plaintiffs, the Board's official policy stated that an employee's "step" on the new pay schedule must correspond to the employee's total years of experience. Further, according to the plaintiffs, assigning each employee to the step that corresponded with his or her years of experience was a ministerial act, and the defendants had no discretion in determining each employee's salary step. The plaintiffs contended that, because the defendants did not assign the plaintiffs to "steps" that corresponded to their years of experience, the plaintiffs' salaries were miscalculated and incorrect payments were made on their behalfs to the Retirement System of Alabama, which resulted in reduced pension benefits for the plaintiffs.
The plaintiffs' claims are based on the following language found in the "introduction" to the salary schedule that was first adopted by the Board in August 2004:
"Certified salaries (teacher) in the salary schedule are based on years of experience, degree/certification and/or assignment. Effective February 1, 1996, certified employees (teachers) were approved to be paid on their highest degree, regardless of the teaching assignment. Years of experience are categorized as 'STEPS' on the schedule. Experience for teachers will be granted based on public education in this system, other public education experience in the State of Alabama, or other public education experience outside the state. It is the responsibility of the employee to submit the appropriate information pertaining to experience, degree/certification and to verify the receipt of the accurate salary."
(Emphasis added.)
In their complaint, the plaintiffs requested declaratory, mandamus, and injunctive relief. Specifically, the plaintiffs requested that the defendants be directed to pay the plaintiffs at the proper rate of pay reflecting their years of experience, that the trial court "issue a declaratory judgment finding that the defendants' purported actions of inequitably paying [the plaintiffs] shall be corrected such that all employees' salaries shall be based upon their years of experience," and that the trial court "declare[ ] that the plaintiffs are entitled to back pay and adjustment of their current salary to reflect years of service." Further, the plaintiffs alleged that the "defendants' actions constitute unlawful, unreasonable, capricious, and arbitrary conduct and represent an abuse of the defendants' official power and discretion" and that "the Board's failure and refusal to establish proper salary schedules which include length of service steps for all classes of employees does not entail a discretionary act but rather is the ignoring of a duty exacted by law."
The trial court dismissed the Board from the case on the basis of State immunity but allowed the action to proceed against the defendants in their official capacities. After conducting a bench trial, the trial court found that the plaintiffs' salaries had been miscalculated and awarded them the monetary relief they requested. The defendants appealed.
Discussion
On appeal, the defendants argue, among other things, that they are entitled to immunity from the plaintiffs' claims. The plaintiffs respond that "the Birmingham *27 Board of Education must follow its own duly adopted salary schedule. An employee can sue when the school system fails to do that; and immunity does not bar monetary relief in such a case." Plaintiffs' brief, at 30. Further, the plaintiffs argue that "state sovereign immunity does not bar an order against official capacity defendants, regarding proper payment for work actually performed, including proper placement on the salary schedule." Id., at 34.
"[T]he State of Alabama shall never be made a defendant in any court of law or equity." Article I, § 14, Ala. Const. 1901. "Section 14 immunity is more than a defense; when applicable, it divests the trial courts of this State of subject-matter jurisdiction." Alabama State Univ. v. Danley, 212 So.3d 112, 127 (Ala. 2016).
Concerning § 14 immunity, this Court has stated:
" 'The wall of immunity erected by § 14 is nearly impregnable. Sanders Lead Co. v. Levine, 370 F.Supp. 1115, 1117 (M.D. Ala. 1973) ; Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala. 1983) ; Hutchinson v. Board of Trustees of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). This immunity may not be waived. Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358, 363 (Ala. 2001) ("The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority."); Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala. 1979) (same); Opinion of the Justices No. 69, 247 Ala. 195, 23 So.2d 505 (1945) (same); see also Dunn Constr. Co. v. State Bd. of Adjustment, 234 Ala. 372, 175 So. 383 (1937). "This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury." State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added); see also Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963).'
" Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002)."
Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 872-73 (Ala. 2004).
"Section 14 immunity is not absolute; there are actions that are not barred by the general rule of immunity.
" '[C]ertain actions are not barred by § 14. There are six general categories of actions that do not come within the prohibition of § 14 : (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 58 (Ala. 2006) (quoting Ex parte Carter, 395 So.2d 65, 68 (Ala. 1980) ); Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831 (Ala. 2008)
*28 (holding that the exception for declaratory-judgment actions applies only to actions against State officials). As we confirmed in Harbert, these "exceptions" to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep't of Transp., 990 So.2d at 840-41.'
" Ex parte Alabama Dep't of Fin., 991 So.2d 1254, 1256-57 (Ala. 2008). The sixth 'exception' to § 14 immunity was restated in Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013), as follows:
" '(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989).' "
Ex parte Hampton, 189 So.3d 14, 17-18 (Ala. 2015).
" 'These actions are sometimes referred to as "exceptions" to § 14 ; however, in actuality these actions are simply not considered to be actions " 'against the State' for § 14 purposes." Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). This Court has qualified those "exceptions," noting that " '[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate.' " Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala. 2004) (quoting Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala. Civ. App. 1995) ) (emphasis added in Jones ).'
" Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 840 (Ala. 2008)."
Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 332 (Ala. 2011).
" 'To determine whether an action against a State officer is, in fact, one against the State, this Court considers
" ' "whether 'a result favorable to the plaintiff would directly affect a contract or property right of the State,' Mitchell [v. Davis, 598 So.2d 801, 806 (Ala. 1992) ], whether the defendant is simply a 'conduit' through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988), and whether 'a judgment against the officer would directly affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc. ], 858 So.2d [257] at 261 [ (Ala. 2003) ]."
" ' Haley [v. Barbour County ], 885 So.2d [783] at 788 [ (Ala. 2004) ]. Additionally, "[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought." Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980).' "
Ex parte Moulton, 116 So.3d 1119, 1130-31 (Ala. 2013) (quoting Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 839-40 (Ala. 2008) ).
*29 In the present case, we note that the plaintiffs did not "seek[ ] construction of a statute and its application in a given situation." See Hampton, 189 So.3d at 18. Instead, the plaintiffs sought a construction of the Board's policy and monetary relief. Thus, the declaratory-judgment "exception" to § 14 immunity does not apply. See Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211 (Ala. 2006) (stating that "[t]he exception afforded declaratory-judgment actions under § 14 generally applies only when the action seeks 'construction of a statute and how it should be applied in a given situation,' Aland v. Graham, 287 Ala. 226, 230, 250 So.2d 677, 679 (1971), and not when an action seeks other relief"). Nevertheless, in addition to seeking declaratory relief, the plaintiffs sought mandamus and injunctive relief. In Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831 (Ala. 2008), this Court stated:
"Generally, mandamus relief is available in certain situations to compel a State officer to perform the ministerial act of tendering payment of liquidated or certain sums the State is legally obligated to pay under a contract. State Highway Dep't v. Milton Constr. Co., 586 So.2d 872, 875 (Ala. 1991) ; see also [Alabama Agric. and Mech. Univ. v.] Jones, 895 So.2d [867] at 877-79 [ (Ala. 2004) ] (describing as 'well-established [the] rule that a writ of mandamus will issue to compel payment of only such claims as are liquidated' and noting that prior caselaw had held 'that payment for goods or services, for which the State had contracted and accepted, could be compelled by mandamus'); and State Bd. of Admin. v. Roquemore, 218 Ala. 120, 124, 117 So. 757, 760 (1928) ('the claim asserted [against the State was] for an amount fixed or determinable by the terms of the contract of sale,' and was 'definite and certain, ... and not an unliquidated claim, in the sense that would render mandamus unavailable').
"We find our opinions in Milton Construction Co. v. State Highway Department, 568 So.2d 784 (Ala. 1990) (' Milton I'), and State Highway Department v. Milton Construction Co., 586 So.2d 872 (Ala. 1991) (' Milton II'), dispositive on this issue. In Milton I, the plaintiff, Milton Construction Company, asked the trial court to declare the disincentive clause of an 'incentive/disincentive-payments provision' in two highway-construction contracts it had entered into with ALDOT (then called 'the Highway Department') void and unenforceable as a penalty. Milton Construction further asked the trial court to order the defendants-the State, ALDOT, and ALDOT's director-to pay it the amounts of 'disincentive payments' ALDOT had allegedly wrongfully withheld. On appeal, this Court held that the 'disincentive clause' in the contracts was 'void as a penalty and therefore unenforceable,' 568 So.2d at 791, and remanded the case.
"On return to remand, the defendants claimed that § 14 barred the trial court from ordering them to pay the money they had withheld from Milton Construction under the void disincentive clause. In Milton II, this Court disagreed, stating:
" 'It is true that § 14 of the Constitution prevents a suit against the state as well as suits against its agencies. See Phillips v. Thomas, 555 So.2d 81 (Ala. 1989) ; Rutledge v. Baldwin County Comm'n, 495 So.2d 49 (Ala. 1986). However, this Court has also recognized that there are certain established exceptions to the protection afforded the state or its agencies by sovereign immunity. See Ex parte Carter, 395 So.2d 65, 68 (Ala. 1981).
*30 Among those recognized exceptions are actions brought to force state employees or agencies to perform their legal duties. Id. See also Nix and Vercelli, Immunities Available In Alabama For Cities, Counties And Other Governmental Entities, And Their Officials, 13 Am. J. Trial Advoc. 615 (1989).
" '... Once the Highway Department has legally contracted under state law for goods or services and accepts such goods or services, the Highway Department also becomes legally obligated to pay for the goods or services accepted in accordance with the terms of the contract. It follows that this obligation is not subject to the doctrine of sovereign immunity and is enforceable in the courts. See, e.g., Gunter v. Beasley, 414 So.2d 41 (Ala. 1982) ; State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757 (1928).
" 'It is undisputed that Milton Construction has already rendered the services called for under the contract. Consequently, we hold that this lawsuit is not barred by the doctrine of sovereign immunity, because it is in the nature of an action to compel state officers to perform their legal duties and pay Milton Construction for services contracted for and rendered. Gunter, supra ; Roquemore, supra.
" 'For example, in Roquemore the Highway Department contracted with Roquemore to purchase hay. After Roquemore had delivered a substantial amount of hay to the Highway Department, it refused to accept any further deliveries of hay and refused to pay for the hay that it had already received. Roquemore petitioned this Court for a writ of mandamus ordering the State Board of Administration and the Highway Department to pay him for the hay that he had delivered. This Court held that the writ was proper and was not barred by the doctrine of sovereign immunity because, under the applicable statutes, the Highway Department could not refuse to pay for goods that it had already accepted. This Court held that the suit in Roquemore was one to force a state agency to perform its legal duty, i.e., to force the Highway Department to pay for the hay that it had already accepted. Likewise, in this case, Milton Construction's action against the Highway Department is not barred by the doctrine of sovereign immunity.'
" Milton II, 586 So.2d at 875. This Court thus upheld the trial court's judgment holding that the moneys withheld under the disincentive clause were due to be paid to Milton Construction.
"Like the plaintiff in Milton I and Milton II, Harbert contended that a provision in a contract with ALDOT was void as a penalty. Harbert thus sought mandamus relief directing that State officers pay the funds withheld by ALDOT. The trial court agreed and, like the trial court in Milton II, ordered that the withheld funds be paid. In their initial brief on appeal, the Governor and the director do not appear to contest the trial court's holding that the liquidated-damages provision was unlawfully applied in this case. Thus, under the authority of Milton II, the trial court's mandamus relief directing that the funds withheld as liquidated damages are due to be returned to Harbert is affirmed. See Hardin v. Fullilove Excavating Co., 353 So.2d 779, 783 (Ala. 1977) (agreeing with the trial court's factual findings and *31 legal conclusions interpreting a contract between a State agency and a contractor 'as calling for payment of the disputed sum' and affirming the issuance of the writ of mandamus to compel State officers to tender payment)."
990 So.2d at 842-44.
Further,
"the trial court can generally, by writ of mandamus, order State officers in certain situations to pay liquidated damages or contractually specified debts. The payment of these certain, liquidated amounts would be only a ministerial act that State officers do not have the discretion to avoid. [Alabama Agric. and Mech. Univ. v.] Jones, 895 So.2d [867] at 878-79 [ (Ala. 2004) ] ; [State Bd. of Admin. v.] Roquemore, 218 Ala. [120] at 124, 117 So. [757] at 760 [ (1928) ]. Furthermore, although the payment of the funds 'may ultimately touch the State treasury,' Horn v. Dunn Bros., 262 Ala. 404, 410, 79 So.2d 11, 17 (1955), the payment does not 'affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc. ], 858 So.2d [257] at 261 [ (Ala. 2003) ], because the funds 'do not belong to the State,' Alabama Dep't of Envtl. Mgmt. v. Lowndesboro, 950 So.2d 1180, 1190 n.6 (Ala. Civ. App. 2005) (two-judge opinion), and the State treasury 'suffers no more than it would' had the State officers originally performed their duties and paid the debts. Horn, 262 Ala. at 410, 79 So.2d at 17. The trial court may not, however, award retroactive relief in the nature of unliquidated damages or compensatory damages, because such relief affects a property or contract right of the State. Stark [v. Troy State Univ., 514 So.2d 46 (Ala. 1987) ]; Williams [v. Hank's Ambulance Serv., Inc., 699 So.2d 1230 (Ala. 1997) ] ; Roquemore; J.B. McCrary Co. v. Brunson, 204 Ala. 85, 86, 85 So. 396, 396 (1920) ('mandamus will not lie to compel the payment of unliquidated claims'); and Vaughan [v. Sibley, 709 So.2d 482 (Ala. Civ. App. 1997) ]....
"Although the trial court cannot award compensatory damages or unliquidated damages in this case, the trial court does have the ability to compel State officers who are acting arbitrarily and capriciously to properly perform their duties. Stark, 514 So.2d at 50 (holding that an action seeking to compel State officers who are acting arbitrarily to perform their legal duties 'will not be barred by the sovereign immunity clause of the Alabama Constitution of 1901'); McDowell-Purcell, [Inc. v. Bass,] 370 So.2d [942] at 944 [ (Ala. 1979) ] ('If judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof.'); St. Clair County v. Town of Riverside, 272 Ala. 294, 296, 128 So.2d 333, 334 (1961) ('Injunctive action may be maintained against a state official, if the official is acting beyond the scope of his authority or acting illegally, in bad faith, or fraudulently.') ...."
Harbert, 990 So.2d at 845-46.
As Justice Murdock correctly noted in his special concurrence in Harbert:
"[I]t becomes critical ... to recognize that the reference in the cases cited in the above-quoted passage from the main opinion to claims that are 'liquidated,' when considered in context, are references not merely to claims for amounts that have been reduced to sums certain, but claims as to which there is no room for dispute as to liability, i.e., whether the amounts at issue are owed."
*32 990 So.2d at 849 (Murdock, J., concurring specially).
Harbert and the cases cited therein dealt with contracts. In Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala. 2011), however, a public-school teacher sued the members of the Bessemer Board of Education in their official capacities, alleging that her statutory pay increase had been miscalculated. This Court stated that "it is undisputed that the Bessemer Board members have a statutory duty to pay [the teacher] the appropriate salary increase under [the statute]." Bessemer Bd. of Educ., 68 So.3d at 790 (emphasis added). Thus, this Court held that § 14 immunity did not bar the teacher's claim because, it reasoned, the members of the Bessemer Board of Education had a legal duty to pay the teacher the correctly calculated pay increase under the statute, and the payment of that salary increase was a ministerial act that involved no discretion. 68 So.3d at 790-91.
Therefore, in the present case, assuming that a school-board policy should be treated like a contract or a statute,[3] the issue is whether the defendants acted arbitrarily in interpreting and implementing the Board's policy. If they did not act arbitrarily, they are entitled to § 14 immunity. Specifically, the issue in the present case is whether the language in the introduction to the salary schedule unambiguously created a legal duty for the defendants to assign then classified employees to steps on the salary schedule that directly corresponded to their years of service when they were converted to the new salary schedule. If so, the payment of the claimed backpay and benefits would be a ministerial act the defendants had no discretion to avoid, and § 14 would not bar the plaintiffs' claims insofar as they seek to compel the defendants to pay the backpay and benefits. In that situation, this action would not be an action seeking damages from the State but, rather, an action to compel the performance of a ministerial act, and the payment would not effect a property right of the State because the funds would not belong to the State.
The above-cited decisions contemplate a lack of discretion by State officials when there is no dispute that a particular payment is required. However, in the present case, there is a legitimate dispute as to whether the Board's policy required the defendants to assign existing classified employees to steps on the new salary schedule that directly corresponded to their years of service rather than to their then current rate of pay when they were converted to the new salary schedule. The defendants' interpretation and implementation of the policy was not arbitrary. The sentence upon which the plaintiffs rely simply states: "Years of experience are categorized as 'STEPS' on the schedule." Neither that sentence nor the sentences that surround it say anything specifically *33 about how to initially place existing employees on the new salary schedule. Furthermore, the paragraph containing that sentence refers only to "certified" employees or "teachers," not classified employees like the plaintiffs. Therefore, the defendants did not exceed their discretion or act arbitrarily when they interpreted and implemented the policy with regard to initially placing classified employees on the new salary schedule. Thus, the defendants cannot be compelled to accept the plaintiffs' interpretation. Accordingly, the defendants were entitled to § 14 immunity, and the trial court was divested of subject-matter jurisdiction over this case.
Conclusion
Because the trial court lacked subject-matter jurisdiction, its judgment is void, and the appeal is dismissed.
APPEAL DISMISSED.
Stuart and Wise, JJ., concur.
Bolin,* Parker, Murdock, Shaw, and Bryan, JJ., concur in the result.
MURDOCK, Justice (concurring in the result).
I concur in the result. The main opinion quotes from cases such as Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831, 840 (Ala. 2008), and Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala. 2011), from which can be drawn the proposition that the bar of § 14, Ala. Const. 1901, immunity does not prevent a court from requiring a State official to pay an undisputed sum-certain debt for goods or services accepted by the State. The main opinion follows its discussion of these cases, however, with the following statement:
"[T]he issue is whether the defendants acted arbitrarily in interpreting and implementing the Board's policy. If they did not act arbitrarily, they are entitled to § 14 immunity."
238 So.3d at 32. Elsewhere, the main opinion suggests that the issue is whether a State official can be said to have "exceed[ed] [his ]discretion" in making a decision about the payment of an alleged debt. 238 So.3d at 33.
The latter standards-arbitrariness and excess of discretion-are not the equivalent of the principles governing such cases as Harbert and Bessemer. Nor have those latter standards ever been articulated previously in our precedents. Instead, the principle suggested by cases such as Harbert and Bessemer is simply whether the amount owed is undisputed in the sense and for the reasons referenced above. If it is not, then there is immunity, regardless whether the State official's decision regarding it might, in retrospect, be deemed by a court of law to have been "arbitrary" or "in excess of the official's discretion."
For that matter, to accept the latter standards seems to me to be a major step toward outright abolishment of § 14 immunity in relation to suits against State officials. When a decision is challenged by an alleged creditor on the ground that the State official's decision is contrary to law (or the facts), such error is too easily framed by a litigant and a court alike as one that was "arbitrary" or in "excess" of the official's discretion. Indeed, our cases *34 have equated decisions that are simply contrary to the law as ones that are arbitrary or in excess of discretion. E.g., Corner Stone Funeral Chapel, Inc. v. MVMG, LLC, 170 So.3d 626, 630 (Ala. 2014) (" ' "A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice." ' " (quoting Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So.2d 701, 705 (Ala. 2008), quoting, in turn, Edwards v. Allied Home Mortg. Capital Corp., 962 So.2d 194, 213 (Ala. 2007) ) (emphasis added)). Such a step is a bridge farther than even this writer has previously suggested. Compare Alabama State Univ. v. Danley, 212 So.3d 112, 143 (Ala. 2016) (Murdock, J., concurring specially in case no. 1140907 and concurring in the result in case no. 1141241) (suggesting that there should not be § 14 immunity as to claims for moneys owed for conforming goods or services tendered to, but not yet accepted by, the State).
SHAW, Justice (concurring in the result).
I concur in the result. "In limited circumstances the writ of mandamus will lie to require action of state officials. This is true where discretion is exhausted and that which remains to be done is a ministerial act." McDowell-Purcell, Inc. v. Bass, 370 So.2d 942, 944 (Ala. 1979). Under Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831 (Ala. 2008), and the numerous cases cited in it, as discussed in the main opinion, when a plaintiff seeks payment of money from the State, the "limited circumstances" in which a writ will lie to compel payment depends on whether the amount sought is "certain" and the State's obligation to pay is "undisputed." If there is doubt as to those, the analysis ends and § 14 bars the action.
In the instant case, the parties dispute the proper interpretation of the new salary schedule at issue. In McDowell-Purcell, we held that a writ of mandamus will not lie to compel a State official "to exercise his discretion and apply the ascertained facts or existing conditions under [a] contract so as to approve payment to [a plaintiff] according to [the plaintiff's] interpretation of the contract rather than his." 370 So.2d at 944. Here, the Board members have not exhausted their discretion, and they cannot be compelled to accept the plaintiffs' interpretation of the salary schedule. A suit against the State, i.e., the Board members in their official capacities, is untenable in this case.
Bryan, J., concurs.

"Classified employees" are support personnel who are not required to have a professional-educator certificate, i.e., non-teachers.

Those 24 employees are: Scott Armstrong, Larry Batain, General Bender, Odessa Beville, Abram Bolden, Harold Childress, Freddie Clark, Walter Cook, Gwendolyn Cotton, Beverly Crosby, Vince Eaton, Lillie Edmond, Lucius Gregg, Edward Ingram, Eloise Gray Ingram, Paul Marzette, Sharon Miles, Kelvin Newsome, Frances Rowser, Anthony Taylor, Vickie Townes, Nathaniel Walton, Jacqueline Welch, and Phyllis Williams.

The Court of Civil Appeals has stated:
" 'A board of education must comply with the policies it adopts.' Ex parte Board of Sch. Comm'rs of Mobile County, 824 So.2d 759, 761 (Ala. 2001). 'Salaries are a matter of school board policy. Once the Board adopts a policy, it is bound to follow that policy until the policy is modified or amended by the Board in accordance with the procedures set forth in [§ 16-1-30, Ala. Code 1975].' Beverly v. Board of Sch. Comm'rs of Mobile County, 678 So.2d 113, 115 (Ala. Civ. App. 1995) (citations omitted)." Limestone Cty. Educ. Ass'n v. Limestone Cty. Bd. of Educ., 880 So.2d 446, 450 (Ala. Civ. App. 2003) (footnote omitted). See also Ex parte Etowah Cty. Bd. of Educ., 584 So.2d 528, 530 (Ala. 1991) ("It is well recognized that the School Board is bound to follow its adopted policies.").

Although Justice Bolin was not present at oral argument in this case, he has listened to the audiotape of the oral argument.