STUART, Chief Justice.
*1116 Deborah Barnhart, Brooke Balch, and Vickie Henderson, current and former officers of the Alabama Space Science Exhibit Commission ("the Commission") (hereinafter referred to collectively as "the Commission officers"), petition this Court for a writ of mandamus directing the Madison Circuit Court to dismiss the claims asserted against them in this class action or, in the alternative, to vacate its order certifying those claims for class-action treatment. We treat the petition as an appeal, and we affirm in part and reverse in part.
I.
The Commission was created as a State agency in 1965 by the Alabama Legislature to provide for and manage "facilities to house and display such visual exhibits of space exploration and hardware used therefor as may be made available by the National Aeronautics and Space Administration." § 41-9-430, Ala. Code 1975. In accordance with that purpose, the Commission opened the U.S. Space & Rocket Center ("the Rocket Center") in March 1970 and, since that time, has continued to operate the popular museum and learning center in Huntsville. At the time this action was initiated, the Commission employed approximately 120 individuals at the Rocket Center.
The Commission is required by law to maintain records of its revenue and expenditures and to periodically make those records available for audit by the Department of Examiners of Public Accounts ("DEPA"). § 41-9-437, Ala. Code 1975. During the summer of 2013, DEPA conducted a financial and compliance audit of the Commission's records for the period spanning October 2007 through September 2012. In October 2013, DEPA representatives met with certain Commission representatives -- including Barnhart, the chief executive officer; and Balch, the vice president of finance -- to discuss the findings of the audit. Among those findings were the conclusions that the Commission had not complied with Alabama law (1) in its payment of annual longevity bonuses to Commission employees and (2) in the manner it compensated Commission employees for working on certain State holidays. With regard to the Commission's payment of annual longevity bonuses, DEPA cited § 36-6-11(a), Ala. Code 1975, which provides:
"Each person employed by the State of Alabama, and all legislative personnel, officers, or employees, including but not limited to Legislative Reference Service personnel, whether subject to the state Merit System or not, shall be entitled to and receive in a lump sum the first payday of December each year the sum of three hundred dollars ($300) per annum after such employee has served for a total period of five years and shall receive the payment until the tenth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of four hundred dollars ($400) per annum until the fifteenth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of five hundred dollars ($500) per annum until the twentieth year of total service, at which time the payment shall be made in a like manner and at a like time but in the amount of *1117 six hundred dollars ($600) per annum until the twenty-fifth year of total service, at which time the payment shall be made in a like manner and at a like time, but in the amount of seven hundred dollars ($700) as long as the employee remains in service. Beginning October 1, 2006, and continuing each fiscal year thereafter in which an employee does not receive a cost-of-living increase in compensation, each per annum amount provided in this subsection shall be increased by one hundred dollars ($100) per year to a maximum amount of one thousand dollars ($1,000) for 25 years of total service as long as the employee remains in service."
DEPA concluded that the Commission had not been complying with § 36-6-11(a) inasmuch as it had not increased the annual longevity bonuses paid to Commission employees in those years in which the Commission employees did not receive cost-of-living raises, and it accordingly recommended that the Commission "re-compute longevity pay for each employee for all years in which they were qualified to receive longevity pay for reason of not having received a cost of living pay increase and [the Commission] should pay the employees the total amount of all underpayments due them."
With regard to the compensation of Commission employees who worked on State holidays, DEPA noted that § 1-3-8, Ala. Code 1975, authorizes 13 State holidays: (1) New Year's Day; (2) Martin Luther King, Jr.'s birthday/Robert E. Lee's birthday; (3) Mardi Gras;[1] (4) George Washington's birthday/Thomas Jefferson's birthday; (5) Confederate Memorial Day; (6) National Memorial Day; (7) Jefferson Davis's birthday; (8) Fourth of July; (9) Labor Day; (10) Columbus Day/Fraternal Day/American Indian Heritage Day; (11) Veterans' Day; (12) Thanksgiving; and (13) Christmas Day. Subsection 1-3-8(e) further provides that "[a]ll state holidays shall be observed by the closing of all state offices" and that "[a]ny state employee working on a state holiday shall receive a day of compensatory leave or paid compensation in lieu of the holiday." In practice, however, the Commission observed only seven of the State holidays,[2] and DEPA accordingly deemed the Commission to be out of compliance with § 1-3-8. To become compliant, DEPA recommended that the Commission observe all the holidays enumerated in § 1-3-8 and that it begin providing compensatory leave or appropriate paid compensation to employees working on those holidays.
Upon being informed of these findings, representatives of the Commission notified DEPA that they disagreed with the finding that the Commission had not complied with § 36-6-11(a) and § 1-3-8 (hereinafter referred to collectively as "the benefits statutes") because, they argued, the legislation pursuant to which the Commission was created, § 41-9-430 et seq., Ala. Code 1975, removed the Commission from the purview of certain state employment laws, *1118 including the benefit statutes. In January 2014, DEPA released the Commission audit to the public, at which time Commission employees became aware of the findings regarding their benefits. Commission representatives, including Barnhart and Henderson, the vice president of human resources, thereafter held a meeting open to all Commission employees at which they stated that they had reviewed the audit and that they disagreed with its findings but that any changes that were required would be made.
No changes were made, however, and on October 16, 2015, several former Commission employees sued the Commission and the Commission officers, alleging that the plaintiffs, as well as other past and present Commission employees, had not received all the compensation to which they were entitled during their tenures as Commission employees. Another lawsuit based on the same general facts was filed in the United States District Court for the Middle District of Alabama; that lawsuit, however, was eventually dismissed. See Ingalls v. U.S. Space & Rocket Ctr., 679 F. App'x 935, 937 (11th Cir. 2017) (not selected for publication in the Federal Reporter ) (affirming the federal district court's dismissal of equal-protection and due-process claims filed against the Commission officers because "the former employees failed to allege a violation of clearly established law" and the former employees "will receive adequate process in their parallel Alabama state court litigation").
The instant action was initially filed in the Montgomery Circuit Court but was subsequently transferred to the Madison Circuit Court. As amended on March 10, 2017, the complaint filed by the former employees of the Commission (hereinafter referred to collectively as "the named plaintiffs") alleged that they had not been paid the amount of longevity bonuses to which they were entitled when they were Commission employees and that they had not been properly compensated for working on State holidays that were not observed at the Rocket Center. The named plaintiffs accordingly asserted claims against the Commission officers in their official capacities seeking (1) a judgment declaring that the Commission's existing policies and compensation plan did not comply with the plain terms of the benefits statutes ("the declaratory-relief claim"); (2) an injunction requiring the Commission officers to henceforth comply with those statutes ("the prospective-relief claim"); and (3) an award of all moneys previously earned but not paid because of the failure to comply with the benefits statutes ("the retrospective-relief claim"). The named plaintiffs also asserted negligence/wantonness and breach-of-fiduciary-duty claims against the Commission officers in their individual capacities ("the individual-capacities claims").[3]
As directed by the trial court, the parties engaged in discovery related solely to the issue of class certification, and, on June 23, 2017, the named plaintiffs formally moved for class certification of their claims. The Commission officers opposed that motion, arguing that class certification was inappropriate, while also moving the trial court to enter a summary judgment in their favor on immunity, standing, and statute-of-limitations grounds. The trial court initially scheduled a hearing on the class-certification and summary-judgment motions for the same day; however, after the named plaintiffs objected to the trial *1119 court's considering the Commission officers' "merit-based defenses" before ruling on their motion for class certification, the trial court instructed the parties that it would not consider the Commission officers' summary-judgment motion until the class-certification issue was decided. See Mitchell v. H&R Block, Inc., 783 So.2d 812, 816 (Ala. 2000) ("The question of class certification is a procedural one distinct from the merits of the action.").
On November 17, 2017, the trial court partially granted the named plaintiffs' motion for class certification. Specifically, the trial court certified for class-action treatment (1) the declaratory-relief claim; (2) the retrospective-relief claim; and (3) the individual-capacities claims.[4] The trial court declined, however, to certify the prospective-relief claim because none of the named plaintiffs were current employees of the Commission and because they might, to the detriment of current Commission employees, accordingly be motivated to focus on recovering past damages as opposed to obtaining prospective injunctive relief that would not directly benefit them.[5]
On December 27, 2017, the Commission officers petitioned this Court for a writ of mandamus directing the trial court to vacate its order certifying the class and to instead enter an order in favor of the Commission officers dismissing the named plaintiffs' claims. On March 21, 2018, this Court stayed proceedings in the trial court pending a final decision on the Commission officers' petition and ordered the named plaintiffs to file an answer to the Commission officers' arguments.
II.
This Court has explained that "the writ of mandamus is to be reserved for genuinely extraordinary situations and circumstances." Hunt v. State, 641 So.2d 270, 271 (Ala. 1994). As such, this Court will issue the writ of mandamus
"only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995) (emphasis added). The Commission officers argue that the instant case presents such an extraordinary situation because, they argue, (1) the trial court lacks subject-matter jurisdiction to consider the named plaintiffs' claims and (2) the requirements for class certification set forth in Rule 23, Ala. R. Civ. P., were not met. In support of their position, the Commission officers cite Ex parte Retirement System of Alabama, 182 So.3d 527, 531-32 (Ala. 2015) (explaining that mandamus will lie to compel the dismissal of claims barred by the doctrine of State immunity), and Ex parte Green Tree Financial Corp., 684 So.2d 1302, 1305 (Ala. 1996) (providing that "[a]n order certifying an action as a class action is subject to review by way of a petition for a writ of mandamus").
*1120 The named plaintiffs, however, argue that the Commission officers' reliance on Ex parte Green Tree is misguided because, in 1999, the legislature enacted § 6-5-642, Ala. Code 1975, which provides that "[a] court's order certifying a class or refusing to certify a class action shall be appealable in the same manner as a final order to the appellate court which would otherwise have jurisdiction over the appeal from a final order in the action." See also Atlanta Cas. Co. v. Russell, 798 So.2d 664, 666 (Ala. 2001) ("The enactment of § 6-5-642, Ala. Code 1975, a statute that became effective before the certification was made in this case, provides parties with the right of appeal from an order granting or denying class certification."). Accordingly, the named plaintiffs argue that the Commission officers' petition for a writ of mandamus should be denied because they have another adequate remedy -- an appeal -- and thus they cannot meet the standard for obtaining mandamus relief. See Ex parte Lewis, 571 So.2d 1069, 1075 (Ala. 1990) (Maddox, J., dissenting) (recognizing that mandamus "obviously would not be available if there was a right of appeal").
The named plaintiffs are correct insofar as they argue that a party can no longer seek appellate review of a trial court's class-certification order by filing a petition for the writ of mandamus; § 6-5-642 governs such challenges and provides that an appeal is the appropriate vehicle by which to bring that issue before this Court. Nevertheless, we decline the named plaintiffs' invitation to deny the Commission officers' petition on this basis. We instead exercise our discretion under the Rules of Appellate Procedure to treat the Commission officers' petition for a writ of mandamus as a notice of appeal. See Kirksey v. Johnson, 166 So.3d 633, 643 (Ala. 2014) (noting that "[t]his Court has treated a notice of appeal as a petition for a writ of mandamus ... and, conversely, treated a petition for a writ of mandamus as a notice of appeal"); Rule 1, Ala. R. App. P. ("[These rules] shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits."); and Rule 2(b), Ala. R. App. P. ("In the interest of expediting decision, or for other good cause shown, an appellate court may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction ...."). Accordingly, we treat the Commission officers' petition for the writ of mandamus as a notice of appeal, and we apply the standard of review applicable to all appeals brought pursuant to § 6-5-642. We have explained that standard as follows:
" ' "This Court has stated that 'class actions may not be approved lightly and ... the determination of whether the prerequisites of Rule 23 [, Ala. R. Civ. P.,] have been satisfied requires a "rigorous analysis." ' " Mayflower Nat'l Life Ins. Co. v. Thomas, 894 So.2d [637] at 641 [ (Ala. 2004) ] (quoting Ex parte Citicorp Acceptance Co., 715 So.2d 199, 203 (Ala. 1997) ). "In reviewing a class-certification order, this Court looks to see whether the trial court exceeded its discretion in entering the order; however, we review de novo the question whether the trial court applied the correct legal standard in reaching its decision." University Fed. Credit Union v. Grayson, 878 So.2d 280, 286 (Ala. 2003). Furthermore,
" ' "[w]e note that an abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that 'the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of *1121 Rule 23.' Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996). Thus, we must consider the sufficiency of the evidence submitted by the plaintiff[s]...."
" ' Compass Bank v. Snow, 823 So.2d 667, 672 (Ala. 2001). See also Smart Prof'l Photocopy Corp. v. Childers-Sims, 850 So.2d 1245, 1249 (Ala. 2002) (holding that if plaintiffs fail to meet the evidentiary burden as required by Rule 23, Ala. R. Civ. P., then the trial court exceeds its discretion in certifying a class action). If the plaintiffs here have failed to meet the evidentiary burden as required by Rule 23, then the trial court exceeded its discretion in certifying a class action.'
" Eufaula Hosp. Corp. v. Lawrence, 32 So.3d 30, 34-35 (Ala. 2009)."
CVS Caremark Corp. v. Lauriello, 175 So.3d 596, 604 (Ala. 2014). Thus, to determine whether the trial court exceeded its discretion in certifying the named plaintiffs' claims for class-action treatment, we must determine whether the named plaintiffs met their burden of establishing that the requirements of Rule 23 were met. See also § 6-5-641(e), Ala. Code 1975 ("When deciding whether a requested class is to be certified, the court shall determine, by employing a rigorous analysis, if the party or parties requesting class certification have proved its or their entitlement to class certification under [ Rule 23 ]. The burden of coming forward with such proof shall at all times be on the party or parties seeking certification ...."). We note, however, that the Commission officers' arguments challenging the subject-matter jurisdiction of the trial court -- which arguments may be asserted at any time, Poiroux v. Rich, 150 So.3d 1027, 1038 (Ala. 2014) -- are subject to de novo review. DuBose v. Weaver, 68 So.3d 814 (Ala. 2011).
III.
Inasmuch as the Commission officers have asserted that they are protected from suit by the doctrine of State immunity and that argument implicates the subject-matter jurisdiction of the trial court, we address that argument before considering whether the trial court exceeded its discretion in certifying the named plaintiffs' claims for class-action treatment. See Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 n. 5 (Ala. 2010) ("Because standing does implicate subject-matter jurisdiction, we address it before considering whether [the appellee] has demonstrated the elements necessary for class certification under Rule 23, Ala. R. Civ. P."). The Commission officers argue specifically that State immunity bars the named plaintiffs' retrospective-relief and individual-capacities claims, so we begin our analysis with a review of those claims.
With regard to the retrospective-relief claim, the Commission officers argue that they are absolutely immune from suit under well established principles of State immunity and that the trial court accordingly should have dismissed this claim early in the litigation before even addressing the issue of class certification.[6] The doctrine of State immunity derives from Ala. Const. 1901, Art. I, § 14, which provides *1122 that "the State of Alabama shall never be made a defendant in any court of law or equity." This Court has explained that, under § 14, not only do the State and its agencies have absolute immunity from suit in any court, but State officers and employees, in their official capacities and individually, also are immune from suit when the action against them is, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989). In Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831, 839 (Ala. 2008), this Court explained that whether a claim asserted against a State officer is effectively a claim against the State hinges on
" 'whether "a result favorable to the plaintiff would directly affect a contract or property right of the State," Mitchell [v. Davis, 598 So.2d 801, 806 (Ala. 1992) ], whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala. 2003) ].'
" Haley [v. Barbour County], 885 So.2d [783] at 788 [ (Ala. 2004) ]. Additionally, '[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.' Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980)."
The Commission officers argue that this Court has previously applied these principles to hold that claims asserted against State officials seeking backpay allegedly owed are claims against the State and are therefore barred by the doctrine of State immunity. See, e.g., Alabama A & M Univ. v. Jones, 895 So.2d 867, 876 (Ala. 2004) (holding that State immunity barred a university professor's claim seeking backpay associated with promised raises that did not materialize). The Commission officers accordingly argue that the trial court erred by certifying the retrospective-relief claim for class-action treatment; instead, they argue, the trial court should have recognized the immunity afforded them by § 14 and dismissed this claim.
The named plaintiffs, however, argue that State immunity does not apply to the retrospective-relief claim because, although that claim seeks the payment of money damages, the claim is, they say, at its core, simply an attempt to compel State officials to perform their legal duty or a ministerial act -- that duty or act being the payment of money class members are entitled to by the clear terms of the benefits statutes -- and such actions are not barred by § 14. See, e.g., Ex parte Alabama Dep't of Fin., 991 So.2d 1254, 1256-57 (Ala. 2008) (stating that "certain actions are not barred by § 14" including "actions brought to compel State officials to perform their legal duties" and "actions to compel State officials to perform ministerial acts"). In support of their argument that the retrospective-relief claim falls within those categories of actions not barred by § 14, the named plaintiffs rely almost exclusively upon Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala. 2011) ; indeed, in its order certifying the retrospective-relief claim for class-action treatment, the trial court referred to this claim as "the Bessemer Board claim." Accordingly, we begin our analysis by reviewing the holding of Ex parte Bessemer Board of Education, which was summarized in Alabama State University v. Danley, 212 So.3d 112, 125-26 (Ala. 2016) :
"At issue in Ex parte Bessemer Board was § 16-22-13.1, Ala. Code 1975, which provides the method of calculating percentage *1123 pay increases for public-education employees based on their years of experience. 68 So.3d at 786. Jean Minor, a teacher in the Bessemer School System, sued, among others, the members of the Bessemer Board of Education in their official capacities, alleging that her statutory pay increase had been miscalculated. 68 So.3d at 785. Minor sought backpay for the 2000-2001 fiscal year and sought to have her pay calculated correctly for the ensuing years pursuant to the guidelines in § 16-22-13.1. 68 So.3d at 786. The board members, claiming immunity, moved for either a dismissal of the complaint or a summary judgment. The trial court entered a judgment dismissing all claims against the board members on the basis of sovereign immunity, but after Minor filed a motion to alter or amend the judgment, the trial court vacated its earlier judgment and entered a new judgment in favor of Minor. In doing so, the trial court found that the board members were not entitled to immunity because they had no discretion in paying Minor the correct salary increase provided in § 16-22-13.1. The board members sought a writ of mandamus from this Court directing the trial court to dismiss Minor's claims against them on the basis of immunity. 68 So.3d at 788.
"In denying the petition, this Court noted that Minor was entitled to bring an action to compel the board members to perform a legal duty or ministerial act and that Minor's salary increase involved 'obedience to the statute; it does not involve any discretion.' 68 So.3d at 790. The issue in Ex parte Bessemer Board was not whether Minor was entitled to a salary increase; rather, the issue was simply whether the salary increase had been calculated correctly. Thus, Minor's action seeking the pay increase to which she was statutorily entitled was not an action seeking damages from the State but, rather, was an action to compel the performance of a ministerial act.
"Those facts distinguish Ex parte Bessemer Board from this case. Minor sought payment of salary that she had already earned, but had not received because of an error in calculation, and sought to have her future salary calculated correctly; her action essentially was nothing more than a plea to the trial court to order the board to perform correct mathematical computations."
(Footnote omitted.) Thus, Ex parte Bessemer Board stands for the proposition that a claim for backpay will be allowed where it is undisputed that sum-certain statutorily required payments should have been made. In such instances, the defendant State officials had a legal duty to make those payments all along and, in finally doing so, they are not exercising discretion; rather, they are merely performing a ministerial act. 68 So.3d at 790. Accordingly, such a claim is not truly a claim asserted against the State and is not barred by § 14. See Harbert, 990 So.2d at 845-46 (explaining that a court order requiring State officials to pay funds undisputedly owed by the State does not actually affect the financial status of the State because the funds at issue do not belong to the State and the State treasury is in no worse a position than if the State officials had originally performed their duties and paid the funds).
The Commission officers argue, however, that Ex parte Bessemer Board is distinguishable because it was undisputed in that case that the plaintiff should have been given the appropriate statutory pay increase, but, they argue, as already recognized by the Eleventh Circuit Court of Appeals, whether the Commission is subject to the benefit statutes is disputed in this case. See Ingalls, 679 F. App'x at 940 *1124 ("The Commission's employees are uniquely situated under Alabama law, and an apparent conflict between the Commission's enabling legislation and the benefits statutes gave the [Commission officers] a reasonable statutory basis for their decision."). In support of this distinction, the Commission officers cite Woodfin v. Bender, 238 So.3d 24 (Ala. 2017) (per Main, J., with two Justices concurring and five Justices concurring in the result), in which this Court reviewed a trial court's judgment awarding the plaintiff school employees monetary damages in connection with their claim that their employing board of education had failed to assign them to the proper "step" when it adopted a new salary schedule in 2004, thus resulting in reduced wages over the following years.[7] The plaintiff school employees argued that the award entered in their favor by the trial court was proper under Ex parte Bessemer Board; however, this Court distinguished that case by noting that in Ex parte Bessemer Board there was no dispute that the plaintiff should have been paid the funds she claimed were owed her, but in Woodfin there was "a legitimate dispute" as to whether the defendant board-of-education officials had an actual duty to assign the plaintiff school employees to steps in accordance with the plaintiff school employees' interpretation of the salary schedule. 238 So.3d at 32. Therefore, the payment of the funds to which the plaintiff school employees claimed they were entitled was not merely a ministerial act. Id. Accordingly, § 14 applied, the defendant board-of-education officials were entitled to State immunity, and the trial court's judgment was void for want of subject-matter jurisdiction. Id.
Upon analysis, it is evident that the facts in the instant case are more akin to Ex parte Bessemer Board than to Woodfin. At its core, Woodfin was a dispute regarding a school-board policy and how and whether that policy applied to the plaintiff school employees; this Court ultimately held that the defendant board-of-education officials had discretion in how "they interpreted and implemented the policy" and that they could not "be compelled to accept the plaintiffs' interpretation." 238 So.3d at 33. See also McDowell-Purcell, Inc. v. Bass, 370 So.2d 942, 944 (Ala. 1979) ("The writ of mandamus will not lie to compel [a State official] to exercise his discretion and apply the ascertained facts or existing conditions under [a] contract so as to approve payment to [a plaintiff] according to [the plaintiff's] interpretation of the contract rather than [the State official's]."). In contrast, the issue in this case, as in Ex parte Bessemer Board, is one of statutory interpretation -- does a statute entitle the plaintiffs to compensation they did not receive. As this Court explained in Ex parte Bessemer Board:
"[I]t is undisputed that the Bessemer Board members have a statutory duty to pay [the plaintiff] the appropriate salary increase under § 16-22-13.1, Ala. Code 1975. That statute specifically provides that a public school teacher with [the plaintiff's] years of experience being paid under the State minimum-salary schedule shall receive a 5.5% increase in salary beginning with the fiscal year 2000-2001. The basis for this calculation is at issue in this lawsuit. The amount of the salary increase the Bessemer Board members must pay [the plaintiff] involves obedience to the statute; it does not involve any discretion. The Bessemer *1125 Board members have a legal duty to pay [the plaintiff] the correctly calculated salary increase under the statute and in doing so they are performing a ministerial act. Therefore, [the plaintiff's] action against the Bessemer Board members in their official capacities is not an action 'against the State' for § 14 purposes; thus, the Bessemer Board members are not entitled to § 14 immunity from [the plaintiff's] action to compel them to fulfill their statutory duty to pay her the appropriate salary increase."
68 So.3d at 790-91 (emphasis added). Thus, if the benefit statutes obligated the Commission officers to pay the named plaintiffs compensation they were not paid, the Commission officers had no discretion to avoid that requirement; obedience to the statute is mandatory. Any confusion the Commission officers might have had regarding the interpretation of the benefit statutes, however reasonable, is ultimately immaterial because that confusion cannot serve as the basis for avoiding a statutory requirement. In sum, if it is ultimately determined that the named plaintiffs should have received additional compensation pursuant to the benefit statutes, the Commission officers had a legal duty to make those payments all along, and in finally doing so they are merely performing a ministerial act. Accordingly, the named plaintiffs' retrospective-relief claim is not barred by § 14.
IV.
The Commission officers also argue that they are entitled to State immunity with regard to the individual-capacities claims, which similarly seek the payment of money damages, albeit from them personally.[8] This Court has noted the general rule that the State immunity provided by § 14 "cannot be circumvented by suing the [State] official or agent individually," Milton v. Espey, 356 So.2d 1201, 1202 (Ala. 1978), but we have also recognized that § 14 does not bar "actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State." Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013). The named plaintiffs argue that the Commission officers have, at a minimum, operated under a mistaken interpretation of the law, and they accordingly argue that § 14 should not bar their individual-capacities claims. Inasmuch as the Commission officers have acknowledged that they chose not to apply the benefit statutes based on their interpretation of those statutes and their conclusion that the statutes do not apply to the Commission, it might appear that the individual-capacities claims would fall within the mistaken-interpretation-of-the-law exception to § 14 and thus not be barred by State immunity; however, for the reasons that follow we decline to so hold.
In Haley v. Barbour County, 885 So.2d 783, 788 (Ala. 2004), this Court explained:
" 'In determining whether an action against a state officer or employee is, in fact, one against the State, [a] [c]ourt will consider such factors as the nature of the action and the relief sought.' Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989). Such factors include whether 'a result favorable to the plaintiff would directly affect a contract or property right of the State,'
*1126 Mitchell [v. Davis ], 598 So.2d [801,] 806 [ (Ala. 1992) ], whether the defendant is simply a 'conduit' through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988), and whether 'a judgment against the officer would directly affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala. 2003) ]."
Thus, this Court noted in Haley that it would determine whether an action nominally asserted against a State official was truly one against the State based on general factors such as the nature of the action and the relief sought; however, the Court thereafter listed several specific factors for consideration, all of which related to the issue of damages and whether any damages that might be awarded would flow from the State. Subsequent cases involving actions against State officials and questions regarding the applicability of State immunity have also focused on the damages being sought, on occasion to the exclusion of other factors. See, e.g., Ex parte Bronner, 171 So.3d 614, 622 n. 7 (Ala. 2014) ("[A]ny action against a State official that seeks only to recover monetary damages against the official 'in [his or her] individual capacity' is, of course, not an action against that person in his or her official capacity and would of necessity fail to qualify as 'an action against the State' for purposes of § 14."). Inasmuch as the named plaintiffs in the present case have made it clear that they are seeking personal payment from the Commission officers for the tortious misconduct alleged in the individual-capacities claims -- and such a judgment would therefore have no effect on the State treasury -- it might seem, based on Ex parte Bronner, that the individual-capacities claims are not claims against the State and, accordingly, are not barred by § 14. However, regardless of the damages being sought, the nature of those claims requires us to hold otherwise.
The individual-capacities claims asserted by the named plaintiffs include a negligence claim and a breach-of-fiduciary-duty claim. A necessary element of each of those claims is whether, in their individual capacities, the Commission officers owed a duty to the putative class members. See Aliant Bank v. Four Star Invs., Inc., 244 So.3d 896, 907 (Ala. 2017) (noting that one of the elements of both a negligence claim and a breach-of-fiduciary-duty claim is the existence of a duty to the plaintiffs). In fact, the named plaintiffs' complaint alleges, with regard to the negligence claim, that the Commission officers "owe[d] a duty to [Commission] employees to compensate them in accordance with Alabama law, including the mandates of [the benefit statutes]" and, with regard to the breach-of-fiduciary-duty claim, that the Commission officers "owe[d] a fiduciary duty to [Commission] employees to act at all times with the utmost care, honesty, loyalty, and fidelity in all of [the Commission's] actions." It is clear, however, from the named plaintiffs' statement of those claims that the duties allegedly breached by the Commission officers were owed to the putative class members only because of the positions the Commission officers held and that the Commission officers were, accordingly, acting only in their official capacities when they allegedly breached those duties by failing to give effect to the benefit statutes. Stated another way, the Commission officers had no duties in their individual capacities to give effect to the benefit statutes; rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State. See also Aliant Bank, 244 So.3d at 908 ("The determination whether a duty exists is generally a question of law for the court to decide."). Accordingly, the individual-capacities claims are, in effect, claims against the State that are barred by § 14. The nature of the individual-capacities *1127 claims requires this holding, and any previous decisions of this Court containing language indicating that the State immunity afforded by § 14 cannot apply when monetary damages are being sought from State officers in their individual capacities -- such as the dicta quoted above from Ex parte Bronner -- are overruled to the extent they support that proposition.[9]
V.
Inasmuch as we have determined that the trial court can properly exercise subject-matter jurisdiction over at least one of the claims asserted by the named plaintiffs, we now turn to whether those claims were properly certified for class-action treatment. "In order to maintain an action as a class action, a plaintiff must establish the prerequisites of Rule 23(a), Ala. R. Civ. P., as well as one of the requirements set forth in Rule 23(b)." Banker v. Circuit City Stores, Inc., 7 So.3d 992, 995 (Ala. 2008). We first consider Rule 23(a).
" Rule 23(a) provides four prerequisites to bringing a class action: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) it must appear that the representative parties will fairly and adequately protect the interests of the class."
Ex parte Gold Kist, Inc., 646 So.2d 1339, 1341 (Ala. 1994). The Commission officers argue that the named plaintiffs failed to establish the last three of those requirements -- typically referred to as the commonality, typicality, and adequacy requirements -- and we accordingly review only those requirements in this opinion. See CIT Commc'n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C., 37 So.3d 114, 123 (Ala. 2009) (stating that because the defendant did not dispute the trial court's finding that the numerosity and adequacy requirements of Rule 23(a) had been met, this Court would limit its "discussion of Rule 23(a) to the elements of commonality and typicality").
With regard to commonality, the trial court concluded as follows in its order certifying the class:
" Rule 23(a)(2) requires that there be 'questions of law or fact common to the class.' Notably Rule 23(a)(2) 'does not require that all of the questions of law or fact raised by the case be common to all plaintiffs.' Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (citing Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir. 1986) ). But 'a class action must involve issues that are susceptible to classwide proof.' Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled on other grounds by *1128 Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 [126 S.Ct. 1195, 163 L.Ed.2d 1053] (2006).
" 'Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." ' [ Wal-Mart Stores, Inc. v.] Dukes, 564 U.S. [338,] 350 [131 S.Ct. 2541, 180 L.Ed.2d 374 (2011),] quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 [102 S.Ct. 2364, 72 L.Ed.2d 740] (1982) ). Plaintiffs' 'claims must depend on a common contention,' and the common contention 'must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' Id. at 350 [131 S.Ct. 2541]. 'What matters to class certification ... is not the raising of common questions -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.' Id. (internal quotes and citation omitted).
"Here, the record supports a finding that there are a number of questions of law and fact common to the class. [The named plaintiffs'] claims hinge on an alleged uniform compensation policy that is applicable to all Commission employees. The record reflects that the Commission's compensation policy, in respect to paid holidays and longevity pay, has remained unchanged throughout the class period. [The Commission officers] do not dispute that the current compensation policy does not correspond with the requirements of [the benefits statutes]. As such, no class member has been paid in accordance with these statutes.
"As set forth previously, the Commission has not adopted the recommendations of [DEPA] because it contends that the Commission is outside the purview of these statutes. Thus, the primary issue in this case, and the question that [the named plaintiffs'] claims turn upon, is whether the Commission is bound by the state holiday and longevity pay statutes. This 'common contention' is shared among all class members and is 'central to the validity' of each class members' claims. The answer to this common question of law will 'generate common answers' -- either the Commission is bound by [the benefit statutes] or it is not. Regardless of the answer, it will be the same for each class member.
"While this fundamental question is shared among all class members, the record indicates that several other common questions of law and fact exist.
"....
"... [T]he common issues present here which underlie [the named plaintiffs'] claims are susceptible to classwide proof. The Commission compensation policy is uniform and has not changed in the relevant time period. This truth, combined with the fact that the Commission's policy on paid holidays and longevity pay is facially inconsistent with the [benefits statutes], indicates that the proof required for [the named plaintiffs] to succeed on their claims is identical to the evidence required by class members."
The Commission officers acknowledge the general standard cited by the trial court -- that the commonality requirement is met if it is established that there are issues of law or fact common to the class that are susceptible to classwide proof -- but argue that the trial court erred in its conclusion because, they argue, individual determinations will dominate the litigation. Those individual determinations, they argue, include not only damages calculations, but such determinations as whether an employee is even a class member, what dates each employee worked for the Commission, and whether an employee was eligible for longevity pay or worked on any of the *1129 State holidays not observed at the Rocket Center.
We disagree that those individual inquiries make class certification inappropriate. The claims asserted in this litigation are centered on the applicability of the benefits statutes to the Commission. The claims of each class member hinge on that common question of law and will require the same proof, and the answer to that question will not vary from one class member to the next. This is not a case where it is alleged that an employer had different policies for different employees; rather, it is undisputed that there was a single policy not to apply the benefit statutes and that that policy was uniformly applied to the entire class. Moreover, the individual determinations the Commission officers have cited largely all relate to calculating each employee's specific damages, and the necessity of individual damages determinations in a case where common questions of law or fact predominate does not require the conclusion that the commonality requirement has not been met. CIT, 37 So.3d at 126-27. The trial court did not exceed its discretion in holding that there are questions of law or fact common to the class so as to meet the requirement of Rule 23(a)(2).
The Commission officers next argue that the named plaintiffs failed to establish that their claims are typical of the claims of the class. The Commission officers' argument is presented as follows in their brief to this Court:
" Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class,' and Rule 23(b)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.' The trial court [exceeded] its discretion in holding that plaintiffs met these requirements.
"A class representative is not typical or adequate if she is subject to 'unique defenses that could be central to the litigation.' Wright v. Circuit City Stores, Inc., 201 F.R.D. 526, 544 (N.D. Ala. 2001) (typicality lacking where court would need to consider individual employment circumstances of each class member). Even if the statute of limitations did not deprive plaintiffs of standing, it qualifies as a unique defense. Id. The trial court found that the statute of limitations 'has, at least in part, classwide applicability rather than being unique to the named plaintiffs.' However, a current employee would not be subject to the statute of limitations defense for claims within the limitations period. Similarly, a current employee would not face the standing bar that Ingalls, as a former employee, faces. These unique defenses render plaintiffs atypical and inadequate."
The Commission officers' brief, pp. 27-28.[10] Thus, the Commission officers' entire argument is essentially that the named plaintiffs cannot meet the typicality requirement of Rule 23(a)(4) because their claims, the Commission officers argue, are barred by the two-year statute of limitations set forth in § 6-2-38(m), Ala. Code 1975, inasmuch as the named plaintiffs left their employment with the Commission in 2011 and this action was not initiated until October 2015.[11]
*1130 We note, first, that a defendant's mere assertion of a statute-of-limitations defense does not preclude class certification; this Court explained as much in Ex parte Gold Kist:
"We note [the defendant's] contention that it may have an affirmative defense (particularly, a statute of limitations defense) to the contract claim of one of the named plaintiffs and that it may also have certain other defenses unique to another (i.e., defenses not generally applicable to the class). However, contrary to [the defendant's] contention, the possible existence of a defense unique to the claims of one or more of the named plaintiffs, although certainly relevant to the certification decision (i.e., relevant with respect to questions of commonality and typicality of the named plaintiffs' claims, as well as to questions of the overall adequacy of the plaintiffs' representation), did not require the trial court to deny certification. See 1 Newberg On Class Actions § 3.16 (3d ed. 1992) ('The class representative need not show a probability of success on the merits to maintain a class action. Some courts have held that a plaintiff's claim cannot be typical if it has some flaw not present in some or all of the claims of the class members, but most have held that an alleged defect in the plaintiff's claim, such as might be raised in a personal defense, must be resolved in a trial on the merits and will not preclude the maintenance [of] a class action'). See, also, Ex parte Hayes, [579 So.2d 1343], 1345 [ (Ala. 1991) ], wherein this Court stated that if a class representative ultimately cannot protect the interests of the class members, the running of the statutory limitations period is tolled so that an unnamed member of the class may either intervene or be named individually."
646 So.2d at 1342. More recently, this Court emphasized in Baldwin Mutual Insurance Co. v. McCain, 260 So. 3d 801 (Ala. 2018), that the assertion that a class representative's claims are barred by an affirmative defense is relevant at the class-certification stage only insofar as that affirmative defense is unique to the class representative. The defendant in McCain asserted that the claim of the class representative was barred by the doctrine of res judicata. Inasmuch as the class representative appeared to be the only member of the class subject to a res judicata defense, see 260 So. 3d at 812 n. 10, we held that the class representative could not meet the typicality and adequacy requirements of Rule 23(a), explaining:
"As [the defendant] argued in its response to [the plaintiff's] motion for class certification, the application of the doctrine of res judicata to [the plaintiff's] breach-of-contract claims presents the issues whether her claims are subject to a unique defense ( Rule 23(a)(3) ) and whether she would be able to fairly and adequately represent the interests of the class ( Rule 23(a)(4) ). See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000) (observing that 'we regard the law as settled that affirmative defenses should be considered in making class certification decisions') ....
"[The defendant] notes that federal courts have concluded that when a class representative's claims are subject to a unique defense, the class should not be certified, either because the situation renders the class representative's claims *1131 atypical or because the class representative cannot adequately protect the class's interests in that the class representative will have to focus too much time and energy on the unique defense asserted against the class representative.
" 'Several courts have held that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) ; see also J.H. Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 998-99 (7th Cir. 1980) ; Hoexter v. Simmons, 140 F.R.D. 416, 422-23 (D. Ariz. 1991) (plaintiffs['] claims atypical of class because unique defense could be asserted against them); Rolex Employees Retirement Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 664 (D. Or. 1991) ("The certification of a class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or to a subclass.").'
" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). See, e.g., J.H. Cohn & Co. v. American Appraisal Assocs., Inc., 628 F.2d 994, 999 (7th Cir. 1980) (explaining that the unique-defense rule exists because '[t]he fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer'); Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 313 (E.D. Va. 2007) (observing that 'even where a putative class representative's claim is "typical," "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation" ' (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) ) ); and In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig., 848 F.Supp. 527, 559 (D. Del. 1994) (acknowledging that 'dispositive defenses that are unique to the named Plaintiffs may render their claims atypical'). See also Providian [National Bank v. Pritchett], [846 So.2d 1072 (Ala. 2002) ].
"We are persuaded that the foregoing reasoning and authorities announce the correct rule, and that that rule is dispositive of the issue before us. The trial court erred in certifying [the plaintiff's] action for class treatment because the claims of the purported class representative are subject to a unique defense -- res judicata."
260 So. 3d at 811-12 (footnote omitted).
However, in contrast to the class representative in McCain -- who was the only member of the class subject to the asserted affirmative defense -- there are a number of class members in this case whose claims would be barred by the statute of limitations if the Commission officers' argument on that point is ultimately successful; thus, the named plaintiffs are not unique. As the trial court explained in its class-certification order:
"[T]he court finds that the statute of limitations raised by [the Commission officers] has, at least in part, classwide applicability rather than being unique to the named plaintiffs. [The Commission officers] are contending that the money damages claims of any class members who left employment with the Commission prior to October 16, 2013, are time barred. Thus, the [Commission officers'] statute of limitations defense would have *1132 applicability to a large section of the sub-classes to be certified. See Goldwater v. Alston & Bird, 116 F.R.D. 342, 353 (S.D. Ill. 1987) ('As for the unique defense of ... the statute of limitations, this court finds nothing "unique" about the defense. To the contrary, the court fully expects vigorous assertion of these defenses against all of the class members.'). If, after a ruling on the merits, the class becomes limited or even obsolete, or if it later appears that certain claims or relief are not appropriate for class treatment, then the court can alter or vacate its order as necessary."[12]
The trial court's conclusion that the named plaintiffs' claims are typical of the claims of all class members appears to be well grounded in the facts and supported by the law. The asserted claims are all based on the same basic theory -- that Commission employees were not compensated in accordance with Alabama law -- and arise from the same action -- the Commission officers' failure to comply with the benefit statutes, both before and after the release of the DEPA audit. The trial court did not exceed its discretion in concluding that the named plaintiffs met their burden with regard to the typicality requirement of Rule 23(a).
The Commission officers' final argument regarding Rule 23(a) is that the named plaintiffs failed to establish that they can adequately protect the interests of the entire class. The test for determining adequacy requires two related inquiries: 1) are there any conflicts of interests between the class representatives and other members of the class such that those class representatives cannot adequately represent the other class members, and 2) does counsel representing the class have the qualifications, experience, and skill necessary to conduct the litigation? Alabama Mut. Ins. Corp. v. City of Vernon, 178 So.3d 350, 354 (Ala. 2013), and Cutler v. Orkin Exterminating Co., 770 So.2d 67, 71 (Ala. 2000). The Commission officers have not challenged the qualifications, experience, and skill of the named plaintiffs' counsel; rather, they argue only that the interests of the named plaintiffs -- all of whom are former employees of the Commission -- are sufficiently removed from the interests of class members who are current employees of the Commission that the named plaintiffs cannot adequately represent those current employees. The Commission officers argue that this is particularly true with regard to the declaratory-relief claim and that the named plaintiffs even lack standing to pursue that claim.
In its order certifying the declaratory-relief claim for class-action treatment, the trial court stated that "the prevailing question in this lawsuit -- and the declaration plaintiffs ask this court to make -- is whether the Commission is bound by the [benefits] statutes." The Commission officers argue that resolving that question will have no effect on the named plaintiffs because the named plaintiffs are not current Commission employees and they would therefore receive no benefit even if the trial court ultimately held that the Commission was bound by the benefits statutes. The Commission officers accordingly argue that the named plaintiffs lack standing to bring the claim on their own behalf or on behalf of anybody else. See Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So.2d 70, 74 (Ala. 2003) (noting that a party seeking to establish standing must demonstrate that *1133 his or her injury will be redressed by a favorable decision); and Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164, 167 (Ala. 2002) (explaining that a party without a concrete stake in the outcome of the court's decision lacks standing and may not sue on his or her own behalf or on behalf of a class). The named plaintiffs counter by arguing that they do have a stake in the resolution of the declaratory-relief claim because their other claims are dependent on whether the Commission is to be bound by the benefits statutes; that is, if that question is answered in the negative, then their other claims necessarily fail.
When the trial court considered the adequacy requirement of Rule 23(a), it concluded that the named plaintiffs had not demonstrated that they could adequately represent the interests of current Commission employees with regard to the prospective-relief claim because the remedy sought -- an injunction requiring the Commission to henceforth abide by the benefits statutes -- would in no way benefit the named plaintiffs and they might accordingly focus on recovering past damages as opposed to pursuing that prospective injunctive relief. Accordingly, the trial court declined to certify the named plaintiffs' prospective-relief claim. The Commission officers argue that the logic of that holding applies just as much to the declaratory-relief claim and that that claim similarly cannot be maintained by the named plaintiffs. We disagree.
Although it is true that the named plaintiffs would receive no benefit from an injunction requiring the Commission to henceforth abide by the benefits statutes because they no longer work for the Commission, the named plaintiffs would benefit from a declaration that the Commission is bound by the benefits statutes because only then can they prevail on their retrospective-relief claim. That declaration is, in fact, a prerequisite to them obtaining any relief on their claims, and they have no incentive not to expend every effort in pursuit of that declaration because, if it is determined that they are not entitled to that declaration, the rest of their case becomes moot. The named plaintiffs accordingly have a concrete stake in the declaratory-relief claim and standing to pursue it, Kid's Care, 843 So.2d at 167, and they have established that they can adequately represent the interests of other class members, whether current or former employees of the Commission, with regard to the retrospective-relief claim and the declaratory-relief claim.
VI.
The trial court did not exceed its discretion in concluding that the named plaintiffs met the requirements of Rule 23(a) ; however, class certification is still proper only if one of the requirements of Rule 23(b) is met as well. Banker, 7 So.3d at 995. Rule 23(b) provides:
"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
"....
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of *1134 separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
The trial court certified the named plaintiffs' declaratory-relief claim pursuant to Rule 23(b)(2) and their retrospective-relief claim pursuant to Rule 23(b)(3). With regard to the declaratory-relief claim, the trial court stated:
" Rule 23(b)(2) authorizes a class action when the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. 'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' [Wal-Mart Stores, Inc. v.] Dukes, 564 U.S. [338,] 360 [131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ] (internal quotes omitted). 'In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.' Id. 'It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.' Id. 'Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of money damages.' Id. at 360-61 [131 S.Ct. 2541].
"....
"The court finds that the declaratory-relief claim is suitable for class action treatment under (b)(2). As previously noted, the prevailing question in this lawsuit -- and the declaration [the named] plaintiffs ask this court to make -- is whether the Commission is bound by the [benefit] statutes. This question of law can be determined on a classwide basis. If the court declares the Commission compensation policy unlawful, this declaration would apply to all class members. As such, it can be certified under (b)(2) ...."
The Commission officers' argument that the trial court erred in certifying the declaratory-relief claim for class-action treatment under Rule 23(b)(2) is, like their argument that the requirements of Rule 23(a) were not met with regard to this claim, based entirely on the fact that the named plaintiffs are not current employees of the Commission. We have already explained that the named plaintiffs may appropriately bring a declaratory-relief claim on behalf of the class, and we agree with the trial court that certification of the declaratory-relief claim under Rule 23(b)(2) is appropriate as well.
Turning to the named plaintiffs' retrospective-relief claim, which the trial court certified pursuant to Rule 23(b)(3), the Commission officers broadly allege that the trial court erred in this regard; however, they make no specific argument concerning the retrospective-relief claim, instead focusing their arguments regarding Rule 23(b)(3) on the named plaintiffs' individual-capacities claims -- which we have already determined are barred by § 14. Accordingly, in the absence of any specific argument that might indicate the trial court erred, we affirm the trial court's certification of the retrospective-relief claim pursuant to Rule 23(b)(3).
VII.
The named plaintiffs sued the Commission officers asserting various claims stemming *1135 from the Commission's assertion that the benefit statutes do not apply to it and its concomitant decision not to pay Commission employees moneys they would have received had the Commission paid the annual longevity bonuses and compensatory State holiday pay required by those statutes. The trial court thereafter certified the named plaintiffs' retrospective-relief, individual-capacities, and declaratory-relief claims for class-action treatment, and the Commission officers then filed the instant appeal, arguing that the named plaintiffs' claims should be dismissed or, in the alternative, that class certification of those claims was inappropriate. For the reasons discussed above, the Commission officers have not established that the named plaintiffs' retrospective-relief and declaratory-relief claims are barred by the doctrine of State immunity set forth in § 14, and the trial court did not err by not dismissing those claims for a lack of subject-matter jurisdiction. However, the individual-capacities claims are barred by § 14 inasmuch as those claims are essentially claims against the State regardless of the manner in which they have been asserted, and the trial court accordingly erred by not dismissing those claims for lack of subject-matter jurisdiction.
Finally, the named plaintiffs also met their burden under Rule 23, and the trial court did not exceed its discretion by certifying their retrospective-relief and declaratory-relief claims for class-action treatment. Accordingly, the trial court's order certifying this action for class treatment is reversed insofar as it certified the individual-capacities claims; in all other respects it is affirmed. The case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Bolin, Parker, Main, and Sellers, JJ., concur.
Shaw, Wise, Bryan, and Mendheim, JJ., concur in the result.

Mardi Gras is observed as a State holiday only in Mobile and Baldwin Counties, and State offices in those locales are accordingly closed on that holiday. See § 1-3-8(c), Ala. Code 1975. State employees in Alabama's other counties generally work as normal on Mardi Gras but are given a corresponding personal-leave day that may be taken at any time subject to supervisor approval. See § 1-3-8(d), Ala. Code 1975.

The manual for Commission employees provides that the following holidays are observed at the Rocket Center: "New Year's Day," "Martin Luther King's Birthday," "Memorial Day," "Independence Day," "Labor Day," "Thanksgiving Day," and "Christmas Day." The Commission's employee manual further provides that all employees are given three paid personal-leave days each year that may be scheduled on any date subject to supervisor approval.

A claim was asserted against the Commission itself in the original complaint, but that claim was dismissed by the trial court on State immunity grounds. See, e.g., Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989) (holding that "the State and its agencies have absolute immunity from suit in any court" pursuant to Ala. Const. 1901, Art I., § 14).

The trial court also defined two subclasses, one subclass made up of former and current employees of the Commission who received longevity payments during or after 2009 and the other subclass made up of former and current employees of the Commission who, during or after 2009, worked on a State holiday not recognized by the Commission.

Subsequently, on November 21, 2017, the trial court granted a motion to intervene filed by three additional plaintiffs asserting that they were also members of the class. One of those intervening plaintiffs asserts that she is a current employee of the Commission; however, the Commission officers assert that she is actually an employee of a related nonprofit organization that is not a State agency. It is not necessary for us to determine the status of that employee in order to resolve this appeal.

The Commission officers argue that the trial court failed to address their immunity argument before granting the motion for class certification, while the named plaintiffs argue that the trial court did consider the immunity issue and at least implicitly determined that immunity did not apply. It is ultimately unnecessary to determine who is right in this regard; however, we reiterate the principle that claims of immunity should generally be addressed at the earliest possible stage of litigation because immunity is intended to shield a defendant not only from liability, but also from the burdens of defending a drawn-out lawsuit. Ex parte Auburn Univ., 6 So.3d 478, 484 (Ala. 2008).

The board of education had assigned existing school employees to a step based on their then current rate of pay when it adopted the 2004 salary schedule; the plaintiff school employees argue that they should have been assigned a step commensurate with their years of experience.

The Commission officers argued to the trial court that State-agent immunity also bars the individual-capacities claims; however, they state that they "do not raise the State-agent immunity argument in this [appeal], because it is not necessary for the Court to reach that argument." The Commission officers' brief, at p. 18 n. 6.

We are cognizant that this Court generally avoids (1) overruling caselaw when not specifically asked to do so and (2) addressing the merits of a claim at the certification stage of a class-action proceeding. See Ex parte McKinney, 87 So.3d 502, 509 n. 7 (Ala. 2011) ("[T]his Court has long recognized a disinclination to overrule existing caselaw in the absence of either a specific request to do so or an adequate argument asking that we do so."), and Eufaula Hosp. Corp. v. Lawrence, 32 So.3d 30, 34 (Ala. 2009) (agreeing "that a determination on the ultimate merits of an action during class certification is improper"). However, overruling precedent and holding that the named plaintiffs could not establish an essential element of the individual-capacities claims -- the existence of an individual duty -- is appropriate in this case because an assertion of State immunity challenges the subject-matter jurisdiction of the trial court, and, accordingly, any issues necessary to determine whether State immunity ultimately applies must be addressed, whether raised by the parties or not. Alabama Dep't of Conservation & Natural Res. v. Kellar, 227 So.3d 1199, 1201 (Ala. 2017).

The Commission officers expand on this argument elsewhere in their brief when arguing that the named plaintiffs lack standing because their claims are allegedly barred by the statute of limitations. In Wyeth, supra, we clarified that the focus of an inquiry into standing is not on the ultimate viability of a claim, but on whether the plaintiff is the proper party to bring the action. 42 So.3d at 1220.

Section 6-2-38(m) provides that "[a]ll actions for the recovery of wages, overtime, damages, fees, or penalties accruing under laws respecting the payment of wages, overtime, damages, fees, and penalties must be brought within two years."

The trial court further stated that it was not prepared to rule on the merits of the Commission officers' statute-of-limitations argument at this time but that there appeared to be a valid dispute regarding when the statute of limitations began to run and whether it was tolled at any point.